(No. 64779.

*In re* ESTATE OF E. DAVIS WERNICK, Deceased (Garson Wernick, Ex'r, *et al.*, Appellees, v. Mitchell Macks, Appellant).

*Opinion filed February 22, 1989.—Rehearing denied April 3, 1989.*

64

STAMOS and CALVO, JJ., took no part.

WARD, J., dissenting.

Albert E. Jenner, Jr., Eugene R. Wedoff, Cynthia G. Bowman, and Barry Sullivan, of Jenner & Block, and Fred F. Herzog, Seymour J. Layfer and David R. Herzog, of Layfer, Cohen, Handelsman & Mora, Ltd., all of Chicago, for appellant.

Barry A. Feinberg, of Chuhak, Tecson, Kienlen, Feinberg & Grasso, P.C., of Chicago, for appellee Garson Wernick.

Theodore M. Becker and J. Samuel Tenenbaum, of Becker & Tenenbaum, of Chicago, for appellee Samuel

S. Wernick.

JUSTICE MILLER delivered the opinion of the court:

The petitioners, Garson Wernick, executor of the estate of E. Davis Wernick and a son of the decedent, and Samuel S. Wernick, a beneficiary under the decedent's will and a son of the decedent, initiated proceedings in the circuit court of Cook County, probate division, against the respondent, Mitchell Macks. Petitioners sought to recover title to, or fair and adequate consideration for, the decedent's interest in two parcels of real property that the decedent had jointly owned with Macks in a land trust. After a lengthy period of pretrial discovery and hearings, including an earlier appeal to the appellate court, trial commenced. At the conclusion of the evidence, the circuit judge found that Macks had breached his fiduciary duty to the decedent. The judge awarded petitioners one-half of the proceeds from Macks' sale of one of the properties, plus prejudgment interest at the statutory rate, and one-half of the beneficial interest of the other property, which was still held in trust. The trial judge denied the petitioners' request for punitive damages, attorney fees and expenses pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611), and prejudgment interest at the prime rate.

Both the petitioners and the respondent appealed. The appellate court affirmed the judgment awarding the petitioners half the proceeds from the sale of one of the properties, plus statutory prejudgment interest, and a half interest in the other property. The appellate court reversed the trial court's denial of punitive damages, section 2—611 fees and expenses, and prejudgment interest at the prime rate and remanded the cause to the circuit court for calculation of those sums. (151 Ill. App.

3d 234.) We granted the respondent's petition for leave to appeal (107 Ill. 2d R. 315(a)).

Resolution of the issues before us requires an examination of the circumstances surrounding the business relationship of the two men and of the nine years of litigation that preceded the appeal to this court.

The decedent, E. Davis Wernick, was a physician engaged in the general practice of medicine. The respondent, Mitchell Macks, whose primary occupation is real estate investment, is a licensed attorney and the chairman of the board of a Chicago bank. Dr. Wernick and Macks were cousins and close friends. In the early 1960s, Macks and Dr. Wernick began investing in real estate together. By the time of the doctor's death in July 1977, the two men had acquired a total of six properties, most of which produced rental income, and all located in Chicago. The properties were held in several land trusts with Macks and his wife jointly holding a 50% beneficial interest and Dr. Wernick and his wife jointly holding the remaining 50% interest. Dr. Wernick and Macks contributed equal amounts to the purchase prices of the properties, and they shared equally in any profits or losses resulting from their investments. Although the investments were joint, the two men never entered into a written partnership agreement. They did, however, file partnership returns for the investment properties.

Each man performed specific duties with respect to the properties. Dr. Wernick was responsible for the management of the properties, which included keeping the books, collecting the rent, and arranging for preparation of the partnership income tax returns. Macks, in turn, handled all legal matters pertaining to the properties, prepared leases and closing statements, and appeared in court, when necessary, on behalf of the owners. In addition, Macks investigated new properties as potential investments. When acquisition of a new property was ap-

proved by both men, Macks would negotiate the purchase and perform all the necessary legal work. During the execution of his legal duties, Macks had occasion to sign various documents on behalf of the doctor. Macks also represented the doctor in some personal legal matters, including the purchase of his first residence and the preparation of several wills.

Late in 1976, Dr. Wernick was diagnosed as having terminal brain and lung cancer. Mrs. Wernick had died several years earlier, and the doctor met with Macks to discuss the disposition of the six parcels of property jointly held in trust. Because Macks did not want to continue an informal partnership with the doctor's son Garson, Macks agreed to a liquidation of the joint holdings. Shortly thereafter, two of the six properties, located on Clark Street and on Lawrence Avenue in Chicago, were sold to third parties.

In November 1976, it was agreed that Macks would purchase Dr. Wernick's interests in two of the four remaining jointly owned properties. These two properties, located on North Avenue and on Bryn Mawr Avenue in Chicago, were held in two trusts. Dr. Wernick subsequently executed written assignments to Macks of his beneficial interest in the two trusts that held title to the properties. Dr. Wernick's nurse, Patrice Lane, witnessed the assignments, which were dated November 22, 1976.

In February 1977, about six months before his death, Dr. Wernick met with his son Garson, his accountant, and Macks to discuss the disposition of the last two investment properties, which were located on Cedar Street and on Wabash Avenue in Chicago. The Cedar Street property was improved with a building that had been converted into apartments; the parcel on Wabash Avenue was a vacant lot. Ownership of both properties was held in a single trust (trust number 14599). The February

1977 discussion focused mainly on the disposition of the Cedar Street property.

Dr. Wernick and Macks each paid $90,000 to acquire the Cedar Street property. At the February 1977 meeting Macks allegedly offered to purchase Dr. Wernick's interest in the Cedar Street property, or, alternatively, to sell his own interest in the property to the doctor, for $75,000. No agreement was reached at the meeting. At trial, the doctor's son Garson testified that Dr. Wernick had later stated that he would not sell his interest in the Cedar Street property because it was increasing significantly in value. The evidence at trial indicated that both men were aware of the increasing value of the Cedar Street property. In 1973, shortly after it was acquired, the Cedar Street property was offered for sale by Macks and Dr. Wernick at a price of $350,000 to $500,000. An appraisal conducted following the death of Dr. Wernick's wife had valued the property at $325,000. In September 1977, two months after Dr. Wernick's death, the Cedar Street property was appraised for Federal estate tax purposes, and it was valued at $405,000.

Macks' allegation that Dr. Wernick, shortly before his death, had assigned to Macks his beneficial interest in the trust holding title to the Cedar Street property was the underlying cause of this litigation. Believing that Dr. Wernick still had an interest in the Cedar Street property at the time of his death, and unaware that Macks would claim that he had purchased the doctor's interest in the property before Dr. Wernick's death, an attorney for the executor of the doctor's estate contacted Macks in April 1979 to request an accounting on the property. Macks promptly responded that he had purchased all the doctor's right, title, and interest in the Cedar Street property many months before the doctor died.

On December 14, 1979, the petitioners filed a petition for a citation to discover assets, alleging that Macks was

in possession of property belonging to the doctor's estate. On March 25, 1980, Macks filed an answer to the petition in which he denied being in possession of any property belonging to the estate. The petitioners then filed a request for the production of documents, seeking, among other things, documents evidencing the alleged transfer of the Cedar Street property.

On May 21, 1980, Macks responded to the discovery request. Macks stated that he had issued a promissory note in the amount of $90,000 to Dr. Wernick in exchange for the doctor's interest in the Cedar Street property but that he did not have a copy of the note. Macks attached to his response, however, a copy of a trust assignment. The document was dated November 23, 1976, and was an assignment by Dr. Wernick to Macks of the doctor's beneficial interest in a trust identified as "number 18201"; there was no other description of the property held in the trust. The document bore the signature of Patrice Lane as witness to the transaction.

About a week later, on May 29, 1980, counsel for Macks notified the petitioner of an error in document production, indicating that the previously disclosed assignment was not the correct one. Counsel informed the petitioners that the assignment of the Cedar Street property, held in trust number 14599, was a different transaction than the one previously described and had occurred on July 7, 1977. On June 3, 1980, Macks filed an amended response to the discovery request and submitted a copy of another trust assignment from Dr. Wernick to Macks. This document was dated July 7, 1977, and in it Dr. Wernick assigned his interest in trust number 14599 to Macks. The assignment was unwitnessed, and it did not describe the property held in the trust. In the amended response, Macks maintained that he was alone with the doctor at the time the assignment was executed.

On June 9, 1980, the trial court conducted a hearing regarding discovery. Macks testified at the hearing that he and Dr. Wernick had bought the Cedar Street property in 1972 or 1973 for $180,000, with each man paying $90,000 toward the purchase price. Macks also testified that he met alone with the doctor in May or June of 1977 to discuss the disposition of the Cedar Street property. At the meeting, Macks allegedly offered $90,000 for the doctor's interest in the Cedar Street property. According to Macks, the doctor accepted this offer. As a result, Macks drew up the assignment and prepared the note. The note given by Macks in return for the Cedar Street property was a non-interest-bearing note for $90,000 payable in three months. There were no witnesses to the execution of the assignment. Although Macks testified that he routinely made copies of all documents, he said that he did not have a copy of the note; the note was never produced during discovery or at trial. At the hearing on discovery, Macks acknowledged that he had sold the Cedar Street property about 15 months after the July 1977 assignment for money and property worth $400,000. Macks admitted that he had not made any payments on the $90,000 note.

Based on the evidence presented at the discovery hearing, the trial judge granted the petitioners leave to file a citation to recover property. The petitioners filed their citation on January 11, 1980, alleging that Macks had breached his fiduciary duty to Dr. Wernick by entering into the purported assignment for inadequate consideration only days before the doctor's death and at a time when the doctor was not represented by counsel. The citation further alleged that Macks had failed to pay the estate for the doctor's interest in the property, and the citation claimed that title to the property was an asset of the estate. Macks denied each of those allegations in his answer to the citation.

On April 2, 1982, the petitioners were permitted to file an amended citation to recover property. The amended citation claimed as an asset of the estate a one-half interest in the land trust that had held the Cedar Street and Wabash Avenue properties, or its monetary equivalent. The petitioners asked that Macks be ordered to transfer to the estate a half interest in the subject property or to compensate the estate for the property. According to the amended citation, at the time of Dr. Wernick's death the Cedar Street property was worth $405,000 and the Wabash Avenue property was worth $30,000. Macks again denied a duty to transfer, relying on the alleged assignment. In his answer to the amended citation, Macks asserted that he had issued a $90,000 promissory note to the doctor as consideration for the July 7, 1977, assignment of the doctor's beneficial interest in the properties held in trust number 14599. According to Macks, the interest assigned included title to the Wabash Avenue property as well as the Cedar Street property. This was the first time that Macks claimed that he had also purchased the Wabash Avenue property; earlier, in discovery depositions and in various court filings, Macks had indicated that the assignment was for the Cedar Street property only.

Based on Macks' response that he had purchased the Cedar Street property, the petitioners moved for partial summary judgment for the value of the unpaid note, $90,000. Without conceding the existence of the note or the occurrence of the alleged assignment, the petitioners claimed that the partial remedy of a $90,000 judgment was appropriate, in light of Macks' acknowledgement of that sum as the undisputed minimum value of the Cedar Street property. The petitioners' motion made no reference to the doctor's interest in the Wabash Avenue property, and it expressly reserved the issue of the actual value of the Cedar Street property for further consider-

ation. The trial judge granted the petitioners' motion and entered judgment against Macks in the sum of $90,000. Macks subsequently moved for modification of the court's order to full summary judgment, however, arguing that the petitioners were precluded from obtaining any further relief because they had conceded that the assignment had taken place and had "elected their remedy." On June 23, 1982, the trial judge granted Macks' motion and converted the partial summary judgment to a full summary judgment.

The petitioners appealed, and the appellate court found summary judgment inappropriate in light of the existence of several genuine issues of material fact. (*In re Estate of Wernick* (1983), 117 Ill. App. 3d 855.) The issues noted by the appellate court as precluding the entry of a full summary judgment included "whether the alleged transaction took place and, if so, the decedent's capacity to enter into such a transaction; the existence of the purported note and whether, if found to exist, such constituted fair and adequate consideration for the alleged assignment; and whether respondent breached any fiduciary duty owed to the decedent." (117 Ill. App. 3d at 860.) But the appellate court found partial summary judgment in favor of the petitioners appropriate in light of Macks' admission of liability for at least the amount of the $90,000 note he conceded giving for the property. The appellate court therefore reversed the order granting Macks full summary judgment, affirmed the order granting the petitioners' partial summary judgment on the amount of the note, and remanded the cause for a trial on petitioners' amended citation to recover assets.

A bench trial commenced on December 10, 1984. The petitioners presented evidence challenging the existence of the alleged assignment and questioning the validity of the documents presented by Macks. The petitioners also adduced evidence to establish the value of the Cedar

Street property at the time of the doctor's death. At trial, Macks testified that the controverted assignment took place on July 7, 1977, either at Dr. Wernick's home or at his office. Macks, contrary to his previous deposition testimony, claimed that the assignment covered both the Cedar Street and Wabash Avenue properties. Macks explained that although the discussion prior to the transaction focused only on the Cedar Street property, he had assumed that the Wabash Avenue property was also included. Macks said that he had made that assumption because the doctor was interested in disposing of all the jointly held properties, the Cedar Street and Wabash Avenue properties were held in the same trust, and the Wabash Avenue property was of little value.

On January 14, 1985, the trial judge entered judgment in favor of the petitioners. The trial judge found that Macks and Dr. Wernick had had an attorney-client relationship and that Macks therefore had owed a fiduciary duty to the doctor. As a fiduciary, Macks had the burden of proving, by clear and convincing evidence, that the transaction in question was fair. Based upon the evidence of the circumstances surrounding the transaction, the trial judge determined that Macks had failed to meet this burden. In making this finding, the trial judge noted that Dr. Wernick was not represented by independent counsel, that the assignment documents were not witnessed, and that the property was transferred for a price far below its appraised value.

The trial judge determined that the appropriate measure of damages was the amount by which Macks was unjustly enriched as a result of his breach. Evidence indicated that Macks realized a total of $377,250.24 from the sale of the Cedar Street property. The trial judge found that petitioners were entitled to one-half of this amount, or $188,625.12. The trial judge also ordered payment of interest as follows:

(1) prejudgment interest at the statutory rate of 5% per year on the full $188,625.12 from the date of the assignment, July 7, 1977, to the date of entry of partial summary judgment, June 4, 1982;

(2) prejudgment interest at the statutory rate of 5% per year calculated on $98,625.12 ($188,625.12 less the $90,000 partial summary judgment) from the time of entry of partial summary judgment, June 4, 1982, until the date of judgment in the citation proceedings, January 14, 1985; and

(3) interest at the judgment rate of 9% per year calculated on the $90,000 partial summary judgment award from the date of entry, June 4, 1982, until the date it was paid, July 1984.

The court entered judgment against Macks for $174,870.43. This did not include the $90,000 that Macks had already paid in satisfaction of the 1982 partial summary judgment. The trial judge further ordered Macks to transfer a one-half interest in the Wabash Avenue property to the estate. The trial judge denied the petitioners' request for punitive damages, finding no evidence of aggravating circumstances indicative of willfulness, wantonness, malice, or oppression on the part of Macks. The trial judge later denied the petitioners' motion for attorney fees and litigation expenses under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611).

The petitioners appealed and the respondent cross-appealed from the judgment of the trial court. The appellate court affirmed the trial judge's findings of a fiduciary relationship between Macks and Dr. Wernick and of Macks' breach of that relationship. But the appellate court concluded that the amount of compensation awarded by the trial judge was inadequate. Noting that the decision whether to award prejudgment interest requires a balancing of the equities, the appellate court believed that the award of prejudgment interest at the rate

of 5% per year failed to adequately compensate the estate for the amount by which Macks was unjustly enriched and held that the petitioners were also entitled to an award of prejudgment interest at the prime rate. (151 Ill. App. 3d at 245.) The appellate court also ruled that the trial court erred in failing to award the petitioners attorney fees and expenses under section 2—611, noting inconsistent and contradictory statements made by Macks in both prelitigation and post-litigation correspondence. (151 Ill. App. 3d at 248.) The appellate court also held that aggravating circumstances were present in the case and warranted an award of punitive damages to the petitioners. (151 Ill. App. 3d at 249.) The appellate court therefore reversed those parts of the circuit court's judgment denying the petitioners fees and expenses under section 2—611 and punitive damages. The cause was remanded for determinations of those amounts, and for calculation of prejudgment interest at the prime rate.

In his appeal to this court, Macks challenges only those parts of the appellate court's decision allowing the petitioners to recover fees and expenses under section 2—611 of the Code of Civil Procedure, punitive damages, and prejudgment interest at the prime rate, in addition to statutory prejudgment interest. Macks does not contest the conclusions of the courts below that he owed a fiduciary duty to Dr. Wernick because of their attorney-client relationship and that he was in breach of that fiduciary relationship. There is some ambiguity in the record on the question whether the trial judge made an express finding that the Cedar Street assignment occurred as Macks described it. Although the transcript contains a statement by the judge to that effect, it is not clear whether the judge was stating his findings or whether he was summarizing Macks' testimony. In any event, we believe that such a finding was implicit in the trial judge's decision that Macks was in breach of a fiduciary

duty in his dealings with the doctor. We accept those conclusions as the starting point for our analysis.

At the time of trial, section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—611) provided, in pertinent part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

Section 2—611 was substantially revised, effective November 25, 1986 (see Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2—611). The petitioners' motion for sanctions was heard and determined by the trial judge under the former version of the statute, and there is no contention raised here that the new version should now apply.

The legislative policy underlying the statute is to penalize the litigant who pleads frivolous or false matters, or who brings a suit without any basis in the law. (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 184-85 (discussing section 41 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 41), the statutory predecessor to the former version of section 2—611).) Because the statute is penal, its provisions should be invoked only in cases falling strictly within its terms. (See *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366; see also *McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 209; *Whirlpool Corp. v. Bank of Naperville* (1981), 97 Ill. App. 3d 139, 144; *Third Establishment, Inc. v. 1931 North Park Apartments* (1981), 93 Ill. App. 3d 234, 243.) A party seeking to recover expenses and attorney fees under section 2—611 has the burden of proving that his opponent made untrue allegations without reasonable cause. (*McCormick*, 114 Ill. App. 3d at 209.) The decision

whether to allow recovery under section 2—611 is within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of discretion. See *Pole Realty*, 84 Ill. 2d at 184-85; *Johnson*, 73 Ill. 2d at 366.

Following entry of judgment in this case, the petitioners filed a motion for sanctions under section 2—611. At the hearing on the motion, the petitioners presented a 37-page list of instances of conduct, testimony, and discovery responses by Macks that allegedly warranted imposition of section 2—611 sanctions. The trial judge found that although there were some discrepancies in Macks' testimony and discovery responses, there was insufficient evidence to support an award under section 2—611. In reaching that conclusion, the trial judge construed section 2—611 as applying only to statements made by a party in pleadings. From among the numerous instances of alleged misconduct complained of by the petitioners, the trial judge found only one questionable pleading: Macks' March 25, 1980, answer to the original petition for a citation to discover assets, in which he denied being in possession of any property of the estate.

The appellate court, however, noting Macks' "inconsistent, contradictory, and misleading statements *** in unofficial correspondence, as well as official court pleadings," ruled that the trial judge had erred in failing to award section 2—611 fees and expenses. (151 Ill. App. 3d at 247.) The appellate court concluded that the totality of the circumstances surrounding the transaction warranted the imposition of section 2—611 sanctions. (151 Ill. App. 3d at 248.) The appellate court cited four examples of misconduct in support of its conclusion. The first was Macks' May 1979 letter to the petitioners' attorney, written in response to the petitioners' request for an accounting of the subject property. Macks asserted in the letter that he had bought Dr. Wernick's interest in the property many months before the doctor's death. The second example

that the appellate court relied on was Macks' March 25, 1980, answer to the petition for citation, in which he denied being in possession of property belonging to the doctor during the doctor's lifetime and at the time of his death. Third, the appellate court mentioned Macks' inconsistent responses, of May 21 and June 3, 1980, to the petitioners' request for production of documents, in which Macks submitted first one assignment, and then another, as evidence of the transfer of the Cedar Street property. Finally, the appellate court noted Macks' inconsistent testimony at trial concerning whether the July 7, 1977, assignment was for the Cedar Street property alone or also included the Wabash Avenue parcel.

We believe that the totality of the circumstances surrounding the transaction, including the four examples of misconduct specifically cited by the appellate court, are insufficient to support an award of fees and expenses under section 2—611 and that the trial judge did not abuse his discretion in denying the petitioners' motion. Unlike the current version of section 2—611, that form of the statute in effect when the petitioners made their request for fees and expenses applied only to allegations and denials that appeared in pleadings, and did not include testimony or pretrial correspondence. (Ill. Rev. Stat. 1983, ch. 110, par. 2—611.) With this limitation in mind, we shall re-examine each of the instances of alleged misconduct cited by the appellate court in support of its decision to permit an award under that statute. Additionally, we note that the burden was on the petitioners to prove that these statements were untrue and made without reasonable cause. See *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366; *Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 355; *McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 209.

The 1979 letter from Macks to the petitioners was not a pleading. It was written well in advance of any indication of litigation, and Macks cannot be said to have pleaded an untrue allegation or denial in the letter. Similarly, any inconsistent testimony by Macks at trial—the fourth item cited by the appellate court in support of its decision on this issue—does not constitute allegations or denials made in pleadings.

The second untruthful allegation noted by the appellate court is Macks' denial, in his March 13, 1980, answer to the citation proceedings, that he was in possession of property belonging to the estate of the doctor. The trial judge considered this question at length during the section 2—611 hearing. The judge concluded that Macks' assertion that the debt evidenced by the $90,000 note given to Dr. Wernick was not an asset of the estate, though legally incorrect, was believed by Macks and was not made without reasonable cause. We decline to disturb that assessment.

With respect to the two different assignments attached to Macks' initial and amended responses to the request for production, we believe that the petitioners have failed to establish that Macks knew that he had attached the wrong document to his initial response and that he did so without reasonable cause. The assignment attached to Macks' initial response was actually a copy of one of the assignments executed by Dr. Wernick in November 1976. Eight days after the response was filed, petitioners were notified by counsel of the error in document production. Macks then promptly filed an amended response, which contained a copy of an assignment dated July 7, 1977, from Dr. Wernick to Macks of trust number 14599, the trust in which the Cedar Street property was held. As Macks contends, we find that his conduct in this regard was simply a technical error. Furthermore, section 2—611 subjects a party pleading untrue denials to

reasonable expenses actually incurred by reason of the untrue pleading. As the petitioners were alerted to the mistake within eight days, they cannot complain that they incurred any significant costs due to the attachment of the wrong assignment to the initial response.

The petitioners, in their brief filed in this court, allege further instances of misconduct in support of their claim for section 2—611 sanctions. We have examined the materials complained of, and we shall discuss only two additional matters, both of which appeared in Macks' June 30, 1980, answer to the petitioners' citation to recover property. According to the petitioners, the answer contained two untrue statements. The first statement involved an error in the date of the establishment of the trust instrument for the Cedar Street property. As with the attachment of the wrong assignment, we consider this merely a technical mistake. Although the date was incorrect, we do not believe that the mistake is the type of false statement contemplated by section 2—611. The second allegation involves the representation by Macks, in his answer to the citation to recover property, that Dr. Wernick had assigned his entire interest in the trust, which included both the Cedar Street and the Wabash Avenue parcels, and statements on other occasions that the disputed assignment was of only the Cedar Street property. Evidence in this respect was confusing and contradictory. As we previously noted, the assignment documents refer to the property only by trust number (No. 14599) and do not describe the property included. Ultimately, the trial judge resolved this factual dispute, finding that the assignment related only to the Cedar Street property. We do not believe that the alleged discrepancy in this matter was sufficient to support the imposition of section 2—611 sanctions.

The petitioners further argue that even if section 2—611 is limited to pleadings, testimony and discovery responses are relevant in assessing the veracity and unrea-

sonableness of allegations made in pleadings. Petitioners rely on *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, in support of this proposition. In *Dayan* the trial court awarded nearly $2 million in attorney fees and expenses to the defendant corporation after evidence introduced at trial established that the plaintiff's pleadings were completely untrue and that the plaintiff had presented false evidence during trial. The appellate court affirmed the award, citing contradicting testimony and evidence in support of its decision. The court noted that the presentation of fabricated testimony and concealment of evidence was "compelling proof that a litigant knew or should have known his allegations or denials were untrue." *Dayan*, 126 Ill. App. 3d at 21.

We agree that consideration of contradictory or false testimony and documents is appropriate in determining whether to impose section 2—611 sanctions. Unlike *Dayan*, however, the present cause did not involve blatant misrepresentations and obvious attempts to mislead the court. All discrepancies in this case were resolved without the introduction of dramatically or unequivocally contradictory evidence. Although Macks' trial testimony differed in several respects from statements he had made earlier in depositions and in answers to interrogatories, the inconsistencies, even under *Dayan*, only constitute evidence concerning the issue whether an award under section 2—611 is warranted. Testimonial inconsistencies, in and of themselves, are not a sufficient basis for recovery under section 2—611. Furthermore, the determination of the trial judge must be afforded great deference, for he was able to observe the demeanor of the testifying witnesses and assess their credibility. Our analysis of the evidence and documents supports the trial judge's determination that the imposition of section 2—611 sanctions was inappropriate. The appellate court erred in reversing this finding.

Macks next assigns as error the appellate court's reversal of the trial judge's decision denying the petitioners punitive damages. At the conclusion of trial, the court found the existence of a fiduciary relationship and a subsequent breach of fiduciary duty by Macks. After ruling for the petitioners on the issue of liability, the trial judge noted:

"Punitive damages are allowed only when a wrong is accompanied by aggravating circumstances, such as willfulness, wanton[n]ess, malice or oppression. Punitive damages are awarded as a punishment to the wrongdoer and as a means to deter the defendant and others from committing similar offenses in the future. Such aggravating circumstances are not present in this case. The prayer for punitive damages is denied. *Glass v. Burkett* [(1978), 64 Ill. App. 3d 676]."

The appellate court, however, found the existence of such aggravating circumstances and further determined that an award of punitive damages was "necessary in order to deter similar conduct in the future." 151 Ill. App. 3d at 249.

Macks now maintains that the appellate court's authorization of punitive damages constitutes an assumption of the role of the trial judge and a complete disregard for the applicable standard of review. The petitioners contend that the trial judge misapprehended the law in denying an award of punitive damages and that the appellate court merely corrected that error.

The purpose of punitive damages is twofold: to punish the wrongdoer, and to deter the particular wrongdoer, as well as others, from committing similar acts in the future. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188.) Because of their penal nature, punitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded. (*Kelsay*, 74 Ill. 2d at 188.) Punitive damages

may be awarded in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or other circumstances of aggravation. *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87; see also *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 683.

The determination whether to impose punitive damages requires a two-step process. The trial court must initially decide whether the cause of action in general and the facts of the particular case provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. (*Kelsay*, 74 Ill. 2d at 186.) This determination is a matter of law. If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact. *Kelsay*, 74 Ill. 2d at 186.

In holding that the instant case was an appropriate one for the imposition of punitive damages, the appellate court said:

> "[W]e believe that the pattern of conduct exhibited by Macks from the inception of this controversy was motivated by more than mere ignorance or oversight on his part and that the imposition of punitive damages is not only warranted, but necessary in order to deter similar conduct in the future." (151 Ill. App. 3d at 249.)

Like the trial judge, the appellate court cited *Glass v. Burkett* (1978), 64 Ill. App. 3d 676, in support of its decision.

In *Glass*, suit was initiated against a real estate broker by the co-executors of an estate. The plaintiffs had entered into a listing agreement with defendant to sell a parcel of real estate which was an asset of the estate. The trial judge found that defendant breached his fiduciary duty to plaintiffs by intentionally concealing prospective purchasers, buying the property from the estate, and then selling the property at a substantial profit. Punitive damages were assessed against the defendant.

Upon review, the appellate court affirmed the award, noting that the defendant's conduct was intentional, was not in good faith, and was performed with full knowledge that the loss of his client would be his gain. (*Glass*, 64 Ill. App. 3d at 684.) We agree that a breach of a fiduciary duty may warrant the imposition of punitive damages. *Glass*, in this respect, provides guidance. The ultimate determination, however, is dependent upon the specific facts of the case involved.

The petitioners maintain that the circumstances surrounding the transaction are sufficient to warrant the imposition of punitive damages. The petitioners list a number of circumstances in support of this contention, including the following: the Cedar Street assignment, unlike other transactions, was unwitnessed; the consideration given for the Cedar Street property was less than half its known appraised value; the note allegedly given by Macks in exchange for the assignment was never produced; the note was alleged to be non-interest-bearing, which was contrary to the parties' past transactions; and Macks never made payment on the note. The petitioners further assert that the trial judge's finding of vexatious delay constitutes a factual finding of willful misconduct.

In his post-trial findings of fact, the trial judge cited the circumstances listed above as the basis for a finding of a breach of fiduciary duty. Although this conduct was sufficient to support a finding of a breach of fiduciary duty, the court concluded that it was not so outrageous as to warrant an award of punitive damages.

We believe that the appellate court improperly reversed the trial judge's factual determination that no aggravating circumstances were present to support an award of punitive damages. While a trial court's determination is always subject to review, we will not disturb that finding or substitute our own opinion unless it is against the manifest weight of the evidence. (*Schulenburg*

*v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) Although Macks' conduct during his transactions with the doctor was less than exemplary, based on the evidence presented, and the trial judge's extensive evaluation of that evidence, we cannot say that the decision denying punitive damages was against the manifest weight of the evidence.

The final matter for our determination is whether the appellate court correctly held that the petitioners were entitled to an award of prejudgment interest at the prime rate, and, if so, whether they were also entitled to recover prejudgment interest at the statutory rate. The trial judge allowed the petitioners prejudgment interest at the statutory rate of 5% per year "for vexatious delay." (See Ill. Rev. Stat. 1983, ch. 17, par. 6402 (authorizing awards of interest at an annual rate of 5% for, among other things, "unreasonable and vexatious delay of payment").) According to the appellate court, however, the award of statutory interest standing alone "falls far short of compensating the estate for the amount by which Macks was unjustly enriched and profited as a result of his breach of the obligation owed to the doctor over seven years prior to trial." (151 Ill. App. 3d at 245.) As a result, the appellate court concluded that an award of prime rate interest was necessary to adequately compensate the petitioners for Macks' breach of fiduciary duty. In addition, the appellate court held, for reasons that are not entirely clear, that the trial judge's award of prejudgment interest at the statutory rate could also stand.

The goal of proceedings sounding in equity is to make the injured party whole. The current trend being employed to accomplish this goal is to allow an award of interest on funds owing so that justice might be accomplished in each particular case. (*Lexington Insurance Co. v. Abington Co.* (E.D. Pa. 1985), 621 F. Supp. 18, 21, quoting *Murray Hill Estates v. Bastin* (1971), 442 Pa.

405, 410, 276 A.2d 542, 545.) In Illinois, prejudgment interest may be recovered when warranted by equitable considerations, and disallowed if such an award would not comport with justice and equity. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 332; *Galler v. Galler* (1975), 61 Ill. 2d 464, 474; *Duncan v. Dazey* (1925), 318 Ill. 500, 527.) Moreover, in equity the amount of interest allowed need not fall within any precise terms. (*Duncan*, 318 Ill. at 527.) Whether equitable circumstances support an award of interest is a matter lying within the sound discretion of the trial judge. (*Finley*, 81 Ill. 2d at 332; G. Bogert, The Law of Trusts & Trustees §863 (2d ed. 1982).) Such a determination will not be disturbed on review unless it constitutes an abuse of discretion. *Finley*, 81 Ill. 2d at 332.

The rationale underlying an equitable award of prejudgment interest in a case involving a breach of fiduciary duty is to make the injured party complete by forcing the fiduciary to account for profits and interest he gained by the use of the injured party's money. (*Sack v. Feinman* (1980), 489 Pa. 152, 413 A.2d 1059; *Lexington Insurance*, 621 F. Supp. at 20-21; see also Londrigan, *Prejudgment Interest*, 72 Ill. B.J. 62, 64 (1983).) The injured party is thus compensated for any economic loss occasioned by the inability to use his money. Prejudgment interest in this context acts as a concept of fairness and equity and not as a sanction against the defendant. (Londrigan, *Prejudgment Interest*, 72 Ill. B.J. at 64.) Fundamental principles of damages and compensation dictate that when money has been wrongfully withheld the victim receive interest for the wrongdoer's retention of his money. In past cases where awards of equitable interest were allowed to compensate the injured party, Illinois courts often looked to the prejudgment interest statute to establish a rate sufficient to compensate. Over the past century, however, the statutory rate for prejudgment interest has not been changed to reflect the escalating interest rates in the

market. As a result, the statutory rate does not provide an accurate measure of compensation for money wrongfully withheld.

The evidence in this case supports an award of prejudgment interest to compensate the petitioners for Macks' breach of fiduciary duty. Both the trial and appellate courts found that Macks owed a fiduciary duty to the doctor and that Macks breached this duty during the transactions for the sale of the Cedar Street property. Macks stated that he gave Dr. Wernick a 90-day non-interest-bearing note for $90,000 on July 7, 1977, in exchange for the doctor's interest in the property. Other evidence, however, indicated that the doctor's interest was worth much more than that amount. In June 1980, during proceedings relating to discovery, Macks acknowledged that he had not made any payments on the note, and indeed he did not pay the debt until July 1984. In the interim, however, Macks sold the Cedar Street property for a little more than $375,000 and retained the proceeds for his own use and benefit. Consequently, the petitioners were deprived of the use of their funds for a substantial period of time. As a result, the petitioners are entitled to an award of interest at the prime rate so that they might be made whole. Equity would so dictate. We remand this cause to the circuit court for a calculation of an appropriate amount of interest.

Although we agree with the appellate court that the petitioners are entitled to an award of interest at the prime rate to compensate them for Macks' breach of fiduciary duty, we do not agree with the appellate court that the petitioners are also entitled to an award of interest at the statutory rate. The equitable award of interest is based on the circumstances surrounding Macks' breach of fiduciary duty, and it was on those grounds that the trial judge awarded prejudgment interest at the statutory rate. The judge apparently viewed the interest statute as a lim-

itation on his authority to award interest as a remedy. We conclude that the interest statute is a remedy separate from the equitable powers of the court to make an injured party whole. As we have noted, the statutory rate of 5% is not sufficient to make the petitioners whole, but prime rate interest in an amount to be ascertained based upon available data will compensate the petitioners for their loss. The petitioners are not entitled to a windfall, however, and we conclude that allowing recovery of both statutory interest and equitable interest at the prime rate is unwarranted and duplicative. Accordingly, we must vacate the statutory interest awarded by the trial court.

For the reasons stated, we reverse the appellate court's finding that Macks' conduct was sufficient to warrant the imposition of section 2—611 fees and expenses and punitive damages; we affirm the appellate court's award of equitable prejudgment interest; we vacate the circuit court's award of statutory prejudgment interest; and we remand the cause to the circuit court of Cook County for a calculation of interest.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and vacated in part;*
*cause remanded.*

STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.

JUSTICE WARD, dissenting:

I consider the appellate court was correct in reversing the trial court's denial of punitive damages. As the majority notes, Macks was an attorney engaged in real estate investments and was chairman of the board of a Chicago bank. Dr. Wernick and he were cousins and were, as Macks put it, "like brothers." The doctor obviously re-

posed unqualified trust in Macks. He had drawn the doctor's will and that of his wife. Upon the wife's death, he served as the attorney for her estate, and in the matters involved here, there was between the doctor and Macks a relationship that went beyond the typical fiduciary relation. As the majority observed, Macks does not contest that he breached his fiduciary relationship. But his conduct breached more, and I would uphold the appellate court's holding that punitive damages should have been imposed.