# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Estate of Burren*, 2013 IL App (1st) 120996

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF GLENN H. BURREN, Deceased (Marion Stewart, Linda Kemp, Danielle Burren, and Jeanne Burren, Guardian of Paige Burren and Michael Burren, Minors, Petitioners-Appellees, v. Steven A. Miner, Steven A. Miner, II, Miner, and Kathryn R. Miner, Respondents-Appellants). |
| District & No. | First District, Third Division<br>Docket Nos. 1-12-0996, 1-12-1775, cons. |
| Filed | July 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a will contest instituted by decedent's children, the trial court's decision finding decedent's will invalid and ordering respondent, an attorney who had a close relationship with decedent during his lifetime, to repay nearly $500,000 plus prejudgment interest was upheld on appeal, since the circumstances of the execution of the will raised a presumption that undue influence was exercised over decedent by respondent and he did not rebut that presumption. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-P-5579; the Hon. Susan M. Coleman, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Clifford E. Lund, of West Dundee (Clifford E. Lund, of counsel), William A. Hellyer, Ltd., of Crystal Lake (William A. Hellyer, of counsel), and Robert P. Sheridan, of Chicago (Robert P. Sheridan, of counsel), for appellants. |
|---|---|
|  | Kogut & Associates, of Oak Brook (A. Charles Kogut and Daniel W. Kaminski, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion. Justices Hyman and Pierce concurred in the judgment and opinion. |

# OPINION

¶ 1       In 2004, Glenn Burren signed a will that named his attorney, Steven Miner, as executor. In the will, Glenn named his three children and Steven's two children as the principal legatees of the estate. When Glenn died, Steven filed the will in the probate court. Glenn's children contested the will and petitioned to recover sums of money Glenn gave Steven in the years before Glenn's death. The trial court, after a bench trial, held the will invalid and ordered Steven to pay to the estate almost $500,000, plus prejudgment interest in excess of $200,000. Steven appeals from both the order declaring the will invalid and the order directing Steven to repay the estate more than $700,000.

¶ 2       We find that the evidence raises presumptions that Steven exercised undue influence over Glenn when Glenn signed checks transferring money from Glenn's accounts to Steven, and when Glenn signed the will. We also find the evidence sufficient to support the trial court's finding that Steven failed to rebut the presumption of undue influence. Because we find no trial error and adequate support for the award of damages, we affirm the trial court's judgment.

¶ 3                    BACKGROUND

¶ 4       In 1976, Marion Burren brought her date, Steven, home to meet her parents. Marion's father, Glenn, got along well with Steven, who called Glenn "Pops." They continued to visit each other after Steven and Marion broke up in 1978. Glenn divorced Marion's mother in 1978, and that same year he started dating Steven's mother, Nancy Miner.

¶ 5       Steven graduated from law school and obtained his license to practice law in 1981. He represented Glenn in several real estate transactions, and he represented Marion in her divorce. In June 2003, Steven, acting as attorney for Glenn's sister, Pearl Burren, prepared a power of attorney in which Pearl appointed Glenn as her agent with the power to conduct

financial transactions for her. Glenn wrote several checks to Steven on Pearl's account. When Pearl died in November 2003, Glenn inherited an investment account worth about $620,000, and real estate which Glenn sold, with Steven acting as his attorney, for more than $187,000. Glenn made his bank account a joint account, giving Steven the power to sign checks drawn on Glenn's account.

¶ 6        Glenn came to Steven's home for a birthday party for Steven's son, Steven Miner II, in January 2004. Before leaving, Glenn signed a typewritten will which named Steven as the estate's executor. The will split the bulk of Glenn's estate into five equal parts, with one-fifth going to each of Glenn's three children, Marion Stewart, Linda Kemp and Glenn Burren, Jr., and one-fifth going to each of Steven's children, Steven II and Katy Miner.

¶ 7        Glenn made out many checks to Steven over the course of the following years. The checks totaled almost $500,000. At Steven's behest, Glenn signed a number of letters, on Steven's letterhead and addressed to Glenn, regarding the checks. One dated June 2004 says:

"Re: receipt of $70,000.00

Pops:

Please allow this letter to acknowledge the receipt of $70,000.00 in cash and checks. I remain

Respectfully,

Steven A. Miner

SAM/sm

APPROVED:

Glenn Burren /s/"

¶ 8        Other letters, phrased identically except for the amount of the check, acknowledged checks for $50,000 in September 2004, and $50,000 in October 2004. A similar letter dated December 2003 confirmed receipt of $62,000. In 2006, Glenn signed forms Steven prepared that gave Steven a power of attorney to act on Glenn's behalf for both health care decisions and for Glenn's property.

¶ 9        When Glenn died, on July 20, 2007, his net assets, which exceeded $800,000 in 2004, had dwindled to less than $350,000. Steven petitioned for probate of the will and for letters of office naming him executor of the estate. The court appointed Steven as executor. Marion and Linda contested the will and petitioned for removal of Steven from his position as executor. In October 2008, Marion and Linda filed a citation to recover assets, asking the court to order Steven to pay to the estate $492,779.75, for the checks Glenn gave Steven after May 2003.

¶ 10       Steven filed his response to the citation on July 14, 2009. He did not request a jury. In November 2009, the trial court ordered Steven to retain separate counsel to represent him in his individual capacity, while counsel who represented Steven through the first two years of the litigation would continue to represent him in his capacity as executor of Glenn's estate. In June 2010, the new attorney filed a jury demand for the proceedings on the citation. The trial court granted Marion's motion to strike the demand as untimely.

¶ 11       At the trial on the citation, Marion introduced into evidence a letter Glenn received in

September 2004 from his investment advisor, advising Glenn not to increase his withdrawals from his account, which Glenn had limited to $2,000 per month. The letter indicated that as long as Glenn used only $2,000 per month, he reduced the balance in his account by only $3,500 per year.

¶ 12    Steven testified that Glenn treated him as a father would treat a son, and Glenn treated Steven's children as though they were Glenn's grandchildren. Steven said Glenn made him a joint owner of the bank account because Glenn did not trust his children, and Glenn wanted assurance that if anything happened to him, someone would pay his bills. Steven admitted that he cashed the checks on which Glenn listed him as payee. The checks Steven cashed totaled $498,659.75. Steven did not remember why Glenn paid Steven money out of Pearl's account. Steven testified that he cashed the other checks for Glenn, returning almost all of the money from the checks directly to Glenn. Steven never asked Glenn why he needed so much cash. Steven claimed that the four letters Glenn approved showed that Steven gave the cash back to Glenn. Steven also prepared the letters that Glenn signed directing his investment advisor to issue checks to Steven for $70,000 in April 2004, $49,881 in August 2004, and $49,881 in September 2004. Steven explained that he typed the letters for Glenn because Glenn had no typewriter. Steven admitted that he did not advise Glenn to seek independent legal advice before writing him the checks or adding him onto the joint bank account.

¶ 13    Steven also presented to the court an exhibit he entitled, "Summary and Reconciliation of Decedent's Financial Assets." In the exhibit, Steven listed Glenn's expenses, including all of the checks Glenn wrote to persons other than Steven, and separately listing, without supporting documents, Glenn's payments for his home, his insurance, his telephone service, his taxes, his gas, and other living expenses. Steven claimed that the evidence supporting the exhibit appeared in "Documents provided by Petitioners ***[,] Documents in possession of Citation Respondent ***[,] and Deposition testimony of Petitioners." He filed with the exhibit the deposition excerpts on which he relied, but not the documents. Nor did he specify which documents supported which entries in the summary and reconciliation. He also admitted that he based the exhibit in part on statements Glenn made to him. The sum of the listed expenses, plus the checks appended to the exhibit, came to more than $480,000. Steven sought to use the exhibit as evidence that he gave the cash from all of the checks he cashed back to Glenn, who then used the cash to pay the listed expenses. The court did not admit the exhibit into evidence because it depended, in part, on hearsay.

¶ 14    The trial court found that Glenn relied on Steven for legal and financial advice. The court did not believe Steven's testimony that he gave to Glenn all of the money he received from cashing the checks Glenn gave him, especially because Steven presented "no independent credible evidence to corroborate" his testimony. The court held that Marion and Linda showed that Steven had a fiduciary relationship with Glenn, and Steven benefitted from the transactions with Glenn, so the evidence raised a presumption that Steven exercised undue influence over Glenn. The court concluded that Steven failed to rebut the presumption of undue influence. The court entered a judgment against Steven for $498,659.75 plus interest.

¶ 15    Marion and Linda presented a list of all the checks Steven cashed, with the prime rate of interest on the amount of the check since the date Glenn signed it to the date of the judgment.

The list showed that the total interest amounted to $217,633.23. Steven responded that the court should not have entered the judgment or awarded any interest because his summary exhibit showed that Glenn used the cash from the checks. Steven also claimed that interest should not start on the check's date because he did not cash the checks on the dates Glenn signed them. Steven did not challenge Marion's list of prime rates or her calculations. The court awarded the estate prejudgment interest in the amount of $217,633.23. Steven appealed from the judgment on the citation.

¶ 16    At the hearing on the petition to contest the will, Marion and the estate admitted that Glenn had full control of his faculties in 2004. Walter Hladko testified that he attended Steven II's birthday party in 2004. Glenn asked Hladko to witness a document. Hladko joined Glenn and Nancy in the dining room, and then Steven came into the room, holding the typewritten will. Steven said Hladko would witness Glenn's signing of the will. Hladko did not hear any discussion about the terms of the will. Glenn did not say anything about the beneficiaries. Glenn signed the will, and then Steven showed Hladko where to sign as a witness to Glenn's signature. Nancy also signed as a witness. Neither party presented evidence as to who drafted and typed the will.

¶ 17    The court again found that the evidence raised a presumption of undue influence, and Steven failed to rebut the presumption. The court held the will invalid and revoked the letters of office that named Steven the executor of Glenn's estate. This court assigned docket number 1-12-0996 to Steven's appeal from the judgment holding the will invalid, and docket number 1-12-1775 to Steven's challenge against the order awarding the estate damages and prejudgment interest. We consolidated the appeals.

¶ 18                                    ANALYSIS

¶ 19                               Validity of the Will

¶ 20    In docket number 1-12-0996, Steven challenges only the court's order invalidating the will Glenn signed in January 2004. Steven argues that the evidence concerning the will does not raise a presumption of undue influence. We will reverse the finding of undue influence only if it is contrary to the manifest weight of the evidence. *In re Estate of Long*, 311 Ill. App. 3d 959, 964 (2000). To raise a presumption of undue influence, a party contesting a will must show that the testator had a fiduciary relationship with a person he depended upon and trusted, the fiduciary received a substantial benefit from the will, and the "will [was] prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated." *In re Estate of Jessman*, 197 Ill. App. 3d 414, 419-20 (1990).

¶ 21    Here, the evidence of the attorney-client relationship, the signed powers of attorney, and Steven's close involvement with Glenn's financial affairs, including his ownership interest in their joint account, showed a fiduciary relationship in which Glenn depended on and trusted Steven. By listing Steven's children in the will as beneficiaries, Glenn conferred a benefit on Steven. See *Zachary v. Mills*, 277 Ill. App. 3d 601, 612 (1996); *In re Estate of Stuhlfauth*, 88 Ill. App. 3d 974, 981 (1980).

¶ 22    No one presented evidence as to who prepared the will, but as the person who brought the typewritten will to the table for signing, Steven probably had the best opportunity to

-5-

know who prepared the will. As Steven said Glenn had no typewriter, the court could conclude at least that Glenn did not prepare the will himself. Steven's mother signed the will as a witness, and Steven showed Hladko where to sign as a witness. Thus, Steven participated in the execution of the will. We agree with the trial court that the evidence as a whole raises the presumption that Steven exercised undue influence in procuring Glenn's signature on the will. See *Jessman*, 197 Ill. App. 3d at 419-20.

¶ 23     We also agree with the trial court that Steven failed to rebut the presumption of undue influence. To overcome a presumption of undue influence in a will contest, a fiduciary who benefits from a will must present clear and convincing evidence that in the will, the testator freely expressed his own wishes and not the wishes of the fiduciary. *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 463-65 (1983). Courts have considered such factors as whether the fiduciary "made a full and frank disclosure of all relevant information; *** [whether] adequate consideration was given; and [whether the testator] had independent advice before completing the transaction." *Klaskin v. Klepak*, 126 Ill. 2d 376, 387 (1989).

¶ 24     Here, Steven presented only Hladko as a witness. Steven presented no evidence that Glenn obtained advice from independent counsel, and no evidence showed that Glenn read or understood the legal implications of all of the language in the will. We cannot say that the trial court's finding, that Steven failed to present clear and convincing evidence to rebut the presumption of undue influence, is contrary to the manifest weight of the evidence. Accordingly, we affirm the order declaring the will of January 2004 null and void, and revoking Steven's appointment as executor of the estate.

¶ 25                          Citation to Recover Assets

¶ 26     In the appeal concerning the order requiring Steven to pay to the estate more than $700,000, Steven contends that we should reverse the judgment because the court erred by (1) striking his jury demand; (2) excluding from evidence his exhibit summarizing Glenn's expenditures; (3) finding that he failed to rebut the presumption of undue influence; (4) awarding the estate damages of $498,659.75; and (5) awarding the estate prejudgment interest.

¶ 27                              *Jury Demand*

¶ 28     According to the Code of Civil Procedure, "A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury." 735 ILCS 5/2-1105(a) (West 2008). Steven filed his answer to the citation on July 14, 2009. New counsel for Steven filed a jury demand in June 2010. Therefore, Steven filed his jury demand too late.

¶ 29     Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) gives the trial court discretion to decide whether to grant a plaintiff's late request for a jury trial. *Paul H. Schwendener, Inc. v. Larrabee Commons Partners*, 338 Ill. App. 3d 19, 29 (2003). A party who files a late jury demand must establish good cause for the delay. *Hernandez v. Power Construction Co.*, 73 Ill. 2d 90, 95 (1978). Here, Steven showed only that his original attorney did not seek a jury trial, and a new attorney Steven hired because of a court order in 2009 preferred a jury trial.

Steven presents no authority that suggests that a change of attorneys constitutes good cause for a late jury demand. We cannot say that the trial court abused its discretion when it struck Steven's late jury demand. See *Schwendener*, 338 Ill. App. 3d at 29-30.

¶ 30                                              *Summary Exhibit*

¶ 31    Steven claims that the court erred when it excluded his exhibit that summarized Glenn's expenses and explained how Glenn's estate dwindled from more than $800,000 to less than $350,000 in less than four years. We review the trial court's decision to exclude an exhibit for abuse of discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 33 (2003).

¶ 32    The trial court may admit summary exhibits into evidence if the court cannot conveniently examine the voluminous documents summarized to extract the fact at issue. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 166 (1993). The party presenting the summary must make all summarized documents available in court or to the opposing party, "to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261 (9th Cir.1984). The trial court may exclude the summary on grounds of hearsay, best evidence, or foundation objections. *Veco*, 243 Ill. App. 3d at 166. Any competent witness who has seen the originals may testify to the authenticity of the summary. *Veco*, 243 Ill. App. 3d at 166.

¶ 33    Steven did not specify most of the documents on which he relied in creating the exhibit. The lack of specificity made verification of the exhibit's claims nearly impossible. Steven also relied on unverifiable hearsay, from his own account of his conversations with Glenn. Moreover, the exhibit misleadingly shows all of the distributions to Glenn from the investment account as subtractions from the estate, and Glenn's expenses for rent, gas, insurance and other necessities as separate, additional subtractions from the same estate. The subtractions misrepresent Glenn's expenditures unless Glenn never used the monthly checks he received from his investment account to pay his living expenses. No evidence supports the implicit assertion that Glenn did not use his assets to pay his expenses. Because of the exhibit's lack of verifiability, we find that the trial court did not abuse its discretion by excluding the summary exhibit from evidence.

¶ 34                                              *Undue Influence*

¶ 35    Steven claims that the trial court should not have found that he exercised undue influence over Glenn when Glenn signed checks made out to Steven. We will reverse the trial court's finding of undue influence only if it is contrary to the manifest weight of the evidence. *Klaskin*, 126 Ill. 2d at 389.

¶ 36    Courts closely scrutinize transactions between attorneys and their clients. *Klaskin*, 126 Ill. 2d at 386. "When an attorney engages in a transaction with a client and is benefited thereby, a presumption arises that the transaction proceeded from undue influence. *** [C]ourts require clear and convincing evidence to rebut this presumption." *Klaskin*, 126 Ill. 2d at 386-87.

¶ 37    Steven claims first that he did not benefit from the transactions with Glenn, because he

gave Glenn back all of the cash he received from cashing the checks. Steven's exhibits prove the assertion false, as he provides no accounting for $10,000, even assuming that Glenn used none of the checks he received to pay any of his expenses. Cashing checks he received from Glenn benefitted Steven, giving rise to the presumption of undue influence. See *Klaskin*, 126 Ill. 2d at 386.

¶ 38 Next, Steven argues that he rebutted the presumption of undue influence with evidence of his close relationship with Glenn, Glenn's mental competence, and Steven's repayment to Glenn of most of the amounts Steven received from the cashed checks. Steven asks us to apply the holding of *In re Marriage of Pagano*, 154 Ill. 2d 174 (1992), where the court said:

"The presumption of undue influence applied to agreements between attorneys and their clients is not conclusive, however, and may be rebutted by the attorney. This court has looked to several factors in determining whether such a presumption is overcome, including whether: (1) the attorney made a full and frank disclosure of all relevant information; (2) the client's agreement was based on adequate consideration, and (3) the client had independent advice before completing the transaction. [Citations.] Other Illinois decisions have applied slightly different factors, including whether: (1) the agreement was offered by the lawyer with unquestionable good faith and with complete disclosure, (2) the client entered into the agreement with a full understanding of all facts and their legal importance, and (3) the client's decision was free from undue influence and was fair. " *Pagano*, 154 Ill. 2d at 186.

¶ 39 Steven admits that Glenn had no independent legal advice about the many checks Glenn wrote to Steven. Steven's relationship with Glenn has little bearing here, as "an affectionate relationship between the testator and a preferred beneficiary is not sufficient to rebut a presumption of undue influence." *In re Estate of Mooney*, 117 Ill. App. 3d 993, 998 (1983). Neither does Glenn's mental competence prove a lack of undue influence. See *Pagano*, 154 Ill. 2d at 186.

¶ 40 Steven relies on the letters Glenn signed on Steven's letterhead, concerning four transactions involving a total of $232,000. Steven claims that in the letters Glenn admitted that Steven gave him the entire amount in cash. But the letters do not support Steven's argument. In the letters, addressed to Glenn, Steven "acknowledge[d] the receipt" of the amount of the checks associated with each letter. Glenn signed on a line indicating his approval of the transactions. Giving the letters their most natural interpretation, the letters indicate that Steven received the cash, and Glenn approved the transactions. While the letters help somewhat with the argument that Steven disclosed all the transactions to Glenn, they show no consideration for the sums Steven received, and extremely generous gifts from Glenn to Steven, rather than fair transactions.

¶ 41 Thus, the evidence shows some disclosure, but no independent advice, no consideration, and no fairness. We cannot say that the trial court's finding, that Steven failed to present clear and convincing evidence to rebut the presumption of undue influence, is contrary to the manifest weight of the evidence.

¶ 42                                    *Damages*

¶ 43        The court ordered Steven to pay the estate damages of $498,659.75 plus prejudgment interest. Steven argues that the evidence does not support either award. "[D]amages may not be predicated on speculation or conjecture [citation], but a plaintiff need not prove an exact amount of loss [citation]. It is sufficient if damages are proved to a reasonable degree of certainty [citation]; that is, the evidence must tend to establish a basis for the assessment with a fair degree of probability." *Nemeth v. Banhalmi*, 125 Ill. App. 3d 938, 967 (1984). "A trial court's assessment of damages will not be overturned unless it is against the manifest weight of the evidence." *Shaw v. Bridges-Gallagher, Inc.*, 174 Ill. App. 3d 680, 684 (1988).

¶ 44        Steven points out that the award of damages exceeds the amount the estate prayed for in the *ad damnum* clause of the citation to recover assets. However, Steven presents no legal authority for the proposition that the *ad damnum* clause limits the amount of the court's award. Steven forfeited the argument by failing to cite legal authority in support. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Glassman v. St. Joseph Hospital*, 259 Ill. App. 3d 730, 742 (1994).

¶ 45        Steven also argues that some of the cash he received from cashing the checks must have paid Glenn's expenses, because Glenn's accounts retained a higher balance than they would have had if Glenn had given Steven $500,000 and Glenn paid all of his own expenses from the remainder of the accounts. However, Glenn had income from social security and from his investments, and he could have used that income to pay many of the expenses Steven lists. Because Steven did not prove his payment of any specific expenses for Glenn to a reasonable certainty, we see no adequate grounds to remand for an assessment of expenditures to set off against the award of damages. See *Nemeth*, 125 Ill. App. 3d at 969. The award of $498,659.75 in damages is not against the manifest weight of the evidence.


¶ 46                               *Prejudgment Interest*

¶ 47        The trial court also awarded the estate interest on each check paid to Steven, calculated at the prime rate of interest starting on the date Glenn signed each check. Illinois permits the award of prejudgment interest to make the injured party whole. *In re Estate of Wernick*, 127 Ill. 2d 61, 86-87 (1989). We will not disturb the trial court's award of prejudgment interest unless the trial court abused its discretion. *Wernick*, 127 Ill. 2d at 87.

¶ 48        Steven claims that we should not award the estate any interest prior to Glenn's death, because the estate could not lose money prior to the estate's inception. Steven has forfeited the argument by failing to cite any legal authority in support. *Glassman*, 259 Ill. App. 3d at 742. When Glenn wrote each check he lost the use of the money, and for the judgment to make the estate whole, the court needed to restore to the estate the amount of the check, coupled with interest from the time that Steven, rather than Glenn, had use of the money. See *Wernick*, 127 Ill. 2d at 86-87. We cannot say that the court abused its discretion by awarding the estate prejudgment interest of $217,633.23. Accordingly, we affirm the judgment in docket number 1-12-1775.

## CONCLUSION

¶ 50   We cannot say that the trial court's findings–that the circumstances surrounding the signing of the 2004 will raise a presumption that Steven exercised undue influence over Glenn in the execution of the will, and that Steven failed to rebut that presumption–are against the manifest weight of the evidence. Therefore, we affirm the judgment holding the will null and void. The trial court did not abuse its discretion when it denied Steven's untimely jury demand for proceedings on the citation to recover assets. We also find no abuse of discretion in the decision to exclude the exhibit in which Steven purported to summarize Glenn's use of his assets, when Steven did not provide adequate documentation for verification of the summary. We cannot say that the court's findings–that the circumstances surrounding the issuance to Steven of the checks Glenn signed raise a presumption that Steven exercised undue influence in obtaining Glenn's signature on the checks, and that Steven failed to rebut that presumption–are against the manifest weight of the evidence. The evidence sufficiently supports the award of damages and prejudgment interest. Accordingly, we affirm the judgment entered against Steven on the citation to recover assets.

¶ 51   Affirmed.