PETER J. COURI, Plaintiff and Counterdefendant, v. THOMAS KORN, Defendant and Counterplaintiff (Martha LaHood, as Independent Ex'x of the Estate of Anthony T. LaHood, et al., Defendants; Martha LaHood, as Independent Ex'x of the Estate of Anthony T. LaHood, Movant-Appellant; Peter J. Couri et al., Respondents-Appellees).

Third District   No. 3—90—0007

Opinion filed September 5, 1990.

Kevin D. Schneider, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Fred G. Hoffman, of Thomas & Hinshaw, Culbertson, of Peoria, and Valerie M. Umholtz, of Moehle, Swearingen & Associates, of Pekin, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:
This appeal concerns a motion for attorney fees filed by defendant, Martha LaHood. Defendant's motion was based on section 2—611 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). Acting on a motion filed by plaintiff, Peter Couri (Couri), to strike defendant's request for attorney fees pursuant to section 2—611, the trial court amended defendant's motion for fees by interlineation to change the basis for the motion to Supreme Court Rule 137 (134 Ill. 2d R. 137). Subsequently, the trial court denied defendant's request for fees, finding the conduct of Couri and Couri's counsel, Valerie M. Umholtz, did not violate Rule 137.

Defendant raises the following issues for our consideration: (1) whether the trial court erred in finding Rule 137 and not section 2—611 applied in this case; and (2) whether the trial court erred in finding Couri's and Umholtz's conduct was not sanctionable under Rule 137. For the reasons that follow, we affirm.

The dispute between Couri, Anthony LaHood (LaHood), Thomas Korn, and South Side Trust & Savings Bank of Peoria (South Side) centers around LaHood's and Korn's alleged oral promises to Couri in 1982 in connection with the organization of Morton Trust and Savings Bank (Morton Bank). Inasmuch as Korn and South Side are not parties to this appeal, only those facts relating to defendant LaHood will be recited. Further, in light of the issues raised by defendant Martha LaHood, a full recitation of the procedural history of this case is in order.

In his original complaint against LaHood and South Side, filed on November 30, 1987, Couri alleged LaHood orally solicited him to be one of the organizers and original shareholders of Morton Bank. Couri agreed in March 1982 to subscribe to 6,400 shares of common stock of Morton Bank at $25 per share. After Couri advised LaHood he could not pay for his stock subscription, LaHood negotiated a $150,000 loan from South Side to pay for Couri's subscription. On March 25, 1982, LaHood and Couri signed a promissory note to South Side for $150,000. According to Couri, South Side knew, at the time the note was signed, that the purpose of the loan was to pay for Couri's subscription to stock. At South Side's request, on May 24, 1982, Couri gave South Side a first mortgage on some real estate he owned individually in Tazewell County as security for the $150,000 loan.

According to Couri, LaHood orally promised him in March 1982 that because Couri could not pay for the stock subscription, LaHood would sell Couri's shares in Morton Bank before selling any other shares held for sale to the public. Further, LaHood orally promised that if Couri's shares were not sold when the note to South Side came due, LaHood would pay the South Side note and take Couri's 6,000 shares. Couri alone paid the interest on the South Side note until May 17, 1983, when LaHood represented to Couri he would pay the note in full, including interest, and have Couri's mortgage released by South Side. Thereafter, LaHood paid only the principal amount of the note ($150,000), had the note marked "paid" and delivered to him, but did not pay any interest which had accrued on the note and did not obtain a release of Couri's mortgage from South Side.

On September 24, 1983, Couri and LaHood signed another promissory note to South Side for $12,645.21, which represented the amount of interest still owing on the $150,000 note. On September 24, 1984, LaHood paid the $12,645.21 note in full and received an assignment from South Side of the interest note and of Couri's first mortgage to South Side. In his complaint, Couri demanded $150,000 in compensatory damages and $500,000 in punitive damages. The complaint was signed only by Couri.

On January 8, 1988, LaHood filed a motion to dismiss Couri's complaint or, in the alternative, to strike the complaint because it was not signed by an attorney as required by section 2—611. LaHood also requested that attorney fees be assessed against Couri pursuant to section 2—611. In response, Couri, on March 22, 1988, requested leave to file an amended complaint to correct inadequacies in the original complaint and to add an additional claim. The trial court granted Couri's motion on July 14, 1988.

On July 26, 1988, Couri filed a seven-count verified amended complaint against LaHood, Korn, and South Side. Counts III, IV, and VII concerned LaHood. Count III alleged breach of an oral contract. Couri alleged LaHood told Couri he would assist him in obtaining a loan to buy the stock and would purchase the stock from Couri when the note came due. Couri alleged the South Side note in the amount of $150,000 was to pay for the 6,000 shares of Morton Bank stock. The original note, signed by Couri and LaHood on March 25, 1982, was due on May 24, 1982. On May 24, 1982, the note was renewed to May 24, 1983. Couri repeated his allegations that he gave the first mortgage to South Side as security for the $150,000 note and that he paid the interest on the renewal note at various times between May 1982 and May 1983. During this time, Couri alleged he made repeated demands on LaHood to purchase his 6,000 shares in Morton Bank. Couri alleged LaHood orally offered, in May 1983, to purchase Couri's 6,000 shares for $160,000. Couri orally accepted LaHood's offer and delivered, on May 17, 1983, the certificates for 6,000 shares to LaHood. Thereafter, LaHood paid only $150,000 to South Side, received the note marked "paid" but did not obtain a release of Couri's mortgage.

In count IV, Couri alleged LaHood engaged in a scheme to defraud Couri. Couri asked for $150,000 in compensatory damages and $500,000 in punitive damages. The amended complaint was signed by Couri's attorney, Umholtz, and by Couri. Count VII set forth a quiet title claim wherein Couri requested a declaratory judgment that LaHood did not hold a valid lien on Couri's Tazewell County property

by virtue of the invalid assignment of the mortgage from South Side to LaHood.

On August 8, 1988, LaHood filed a motion to dismiss counts III and IV of the amended complaint pursuant to section 2—615 of the Code for failure to state a cause of action. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Also on August 8, attorneys representing LaHood filed a motion suggesting the death of LaHood on July 26, 1988. On October 21, 1988, Couri's motion to substitute Martha LaHood (Martha), executor of the estate of Anthony LaHood, was granted. On November 23, 1988, the motion to dismiss counts III and IV was denied and Martha was directed to file an answer to Couri's amended complaint on or before December 30, 1988.

On December 30, 1988, Martha requested an extension of time to file a responsive pleading to Couri's complaint. She argued Couri's deposition testimony required further inquiry of Couri before a responsive pleading could be filed. Martha was given until February 15, 1989, to file a responsive pleading, without objection from Couri.

On January 13, 1989, Martha filed a request for admission of facts pursuant to Supreme Court Rule 216. (107 Ill. 2d R. 216.) In response, Couri, on February 8, 1989, admitted that (1) count III of the amended complaint was premised on an oral contract; (2) the alleged May 1983 oral offer from LaHood was made in a conversation between Couri and LaHood; and (3) there were no other persons who witnessed or heard the alleged oral offer made in May 1983 by LaHood.

On February 16, 1989, Martha filed a motion for summary judgment pursuant to section 2—1005 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) as to counts III, IV and VII of Couri's amended complaint. Martha alleged section 8—201 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 8—201), the Dead Man's Act, barred the introduction of any evidence as to the alleged oral contract between LaHood and Couri. Also, on February 16, Martha filed a motion to dismiss counts III, IV, and VII of Couri's amended complaint pursuant to section 2—619 of the Code. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) Martha alleged Couri's actions in counts III, IV, and VII were barred by the five-year statute of limitations set forth in section 13—205 of the Code. (Ill. Rev. Stat. 1987, ch. 110, par. 13—205.) In response to the motion for summary judgment, Couri filed, on February 27, 1989, a motion to continue the summary judgment motion, arguing he was attempting to obtain evidence regarding LaHood's possible conversations and correspondence with third parties regarding his conversations with Couri in April and May 1983. Fur-

ther, Couri alleged that until Martha filed an answer to Couri's amended complaint, it was still possible admissible evidence or admissions of defendant would obviate Couri's problems with the Dead Man's Act.

On June 6, 1989, the trial court denied Martha LaHood's motion to dismiss and denied Couri's motion to continue Martha's summary judgment motion. On June 23, 1989, Martha was directed to file an answer to Couri's amended complaint. The answer was filed on July 5, 1989. On August 7, 1989, the trial court granted Martha's motion for summary judgment on counts III, IV, and VII of the amended complaint.

On September 6, 1989, Martha filed a motion for attorney fees and costs pursuant to section 2—611. Martha alleged Couri utilized the litigation to conduct a fishing expedition in an attempt to find competent evidence to support his claims instead of conducting a pre-pleading and reasonable inquiry as required by section 2—611. More specifically, Martha alleged Couri (1) in filing and signing the amended complaint, included false allegations regarding the number of shares LaHood agreed to buy from Couri and persisted in these allegations after the true facts were adduced during discovery; (2) failed to have the original complaint signed by an attorney; (3) failed to conduct a reasonable inquiry on July 26, 1988, to determine the death of LaHood, which inquiry would have revealed that Couri thereafter had no competent evidence to support his claims in the amended complaint because of the Dead Man's Act; and (4) Couri unreasonably continued this litigation after it became apparent there was no competent evidence to support his claims. Martha alleged all of the aforementioned actions of Couri violated section 2—611 of the Code and, therefore, subjected Couri to sanctions. Martha asked that the court assess Couri with $14,995.54 in attorney fees and costs incurred by defendant as a result of Couri's actions.

On December 30, 1989, Couri filed a motion to strike defendant's motion for attorney fees or, in the alternative, to deny the motion. Couri alleged Supreme Court Rule 137 governed the request for sanctions, not section 2—611 of the Code. On November 3, 1989, the trial court granted Couri's motion to strike defendant's motion for fees pursuant to section 2—611 and amended defendant's motion by interlineation to substitute the basis for relief to Rule 137. The trial court stated it did not have to decide whether Rule 137 could be applied retroactively because the motion for fees was filed after the effective date of Rule 137.

On December 1, 1989, the trial court found Couri's allegations in

his complaint and conduct did not fall below acceptable conduct so as to violate Rule 137 and, further, that counsel for Couri did not violate Rule 137 by her conduct in this case. The trial court entered findings pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

Martha appeals from the orders on November 3, 1989, and December 1, 1989. We first consider whether the trial court properly determined Couri's and Couri's counsel's conduct was not sanctionable under Rule 137. It is readily apparent, and the parties agree, that Rule 137 does not impose any obligations or duties on litigants and attorneys not included in the latest version of section 2—611 of the Code. We address the conduct of each and Martha's allegations with respect to each in turn.

Martha argues Couri should be sanctioned for pleadings which were determined to be false following discovery. Specifically, defendant points to paragraph 13 of the amended complaint, which states:

"In May 1983, Anthony T. LaHood orally offered to buy 6,000 shares of Plaintiff's stock in Morton Trust for $160,000."

At his deposition on August 20, 1987, Couri testified each organizer of Morton Bank agreed in March 1982 to put up $160,000 for the organization of the Morton Bank. Couri learned later he could not get the money from his pension plan to pay for the stock. After Couri told LaHood and Korn about his financial problem, both told Couri they would borrow the money for Couri. Further, LaHood said he would purchase Couri's stock from him. Couri obtained $10,000 from his pension plan to buy 400 shares of Morton Bank stock. According to Couri, the $150,000 loan LaHood obtained from South Side was to pay for the remaining 6,000 shares Couri pledged to buy. Couri stated LaHood told him in May 1983 when the loan was due that he would pay South Side $160,000. At that time, there was no mention of the 400 shares of Morton Bank stock in Couri's pension plan.

In a second deposition on September 8, 1988, Couri stated that in May 1983, LaHood represented he was in a position to pay South Side $160,000 for the loan there but there was no mention of the number of shares of Morton Bank stock LaHood was paying for. Couri stated that at the time the amount due on the loan to South Side was $161,062, including interest. Couri delivered 6,000 shares of Morton Bank stock to an officer of South Side on May 17, 1983, for delivery to LaHood. Couri further stated that the number of shares LaHood was paying for was never mentioned in any conversation between the two. There was no testimony as to LaHood's knowledge of the 400 shares Couri paid for with $10,000 from his pension plan.

■■ ■ Rule 137, which closely parallels section 2—611 of the Code and Federal Rule of Civil Procedure 11 (28 U.S.C. app. Rule 11, Rules of Civil Procedure, at 575 (1988)), provides for the imposition of sanctions for pleadings not well grounded in fact. Rule 137 dictates, as did section 2—611, that litigants and attorneys have an affirmative duty to conduct an inquiry of the facts and law prior to filing an action, pleading, or other paper. The standard for evaluating conduct is one of reasonableness under the circumstances existing at the time of filing. (*Washington v. Allstate Insurance Co.* (1988), 175 Ill. App. 3d 574, 580, 529 N.E.2d 1086, 1090.) As with a motion pursuant to section 2—611, a party requesting attorney fees under Rule 137 must show that the opposing party pleaded untrue pleadings of fact without reasonable cause. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366, 383 N.E.2d 185, 196.) The decision whether to award fees and expenses rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77-78, 535 N.E.2d 876, 883.

■ Couri's deposition testimony established that (1) the number of shares of Morton Bank stock was never discussed between Couri and LaHood; and (2) LaHood promised to buy Couri's shares the first chance he had and not when the South Side note came due. Regarding the latter allegation, we note Martha did not raise this allegation to support her motion for sanctions in the trial court and first raised this issue in this court in her reply brief. We find Martha waived consideration of this issue as grounds for sanctions under Rule 137. (*Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 1005-06, 431 N.E.2d 1364, 1368.) Further, we find Martha has not established the allegations set forth in paragraph 13 were made without reasonable cause. As Couri testified, while the number of shares was never discussed, he believed the promise LaHood made to him to pay the South Side loan concerned 6,000 shares, not 6,400 shares. Additionally, the record indicates Couri delivered the 6,000 shares to the bank for the benefit of LaHood and LaHood paid the $150,000 note.

■ Rule 137 is, like its predecessor, section 2—611 of the Code, penal in nature and must be invoked only in those cases falling strictly within its terms. (*Wernick*, 127 Ill. 2d at 77, 535 N.E.2d at 883.) A motion for attorney fees will not be granted where the movant has only shown that the facts are ultimately adverse to the pleadings as set forth in the trial court. (*Schnack*, 103 Ill. App. 3d at 1005, 431 N.E.2d at 1367.) We find no abuse of discretion in denying defendant's motion for attorney fees from Couri.

Martha also contends the trial court erred in not imposing sanctions against Couri's attorney. Martha argues Couri's attorney should be sanctioned for (1) failing to sign the original complaint; (2) signing the amended complaint which included a false allegation in paragraph 13; (3) filing the amended complaint without inquiring as to whether LaHood was alive; and (4) continuing the litigation, knowing there was no competent evidence to support Couri's claims, knowing the complaint was not well grounded in fact or warranted in existing law, after it was unreasonable to do so.

■ Attorneys are subject to sanctions under Rule 137 when a pleading is signed in violation of the rule's certificate that, after reasonable inquiry, it is well grounded in fact. (134 Ill. 2d R. 137.) The rule dictates some prefiling inquiries are required to fulfill the affirmative duty imposed. The standard for judging an attorney's conduct is one of reasonableness under the circumstances existing at the time the pleading is signed. (*Washington*, 175 Ill. App. 3d 574, 529 N.E.2d 1086.) An attorney may not be liable for sanctions for filing a false pleading of fact if it was reasonable for the attorney to rely on his client to inform him of the facts underlying the pleading. *Washington*, 175 Ill. App. 3d at 580, 529 N.E.2d at 1090, citing 28 U.S.C.A. R. 11, Notes of the Advisory Committee on Rules, at 391-92 (West Supp. 1988).

■ Regarding the allegations in paragraph 13, we find it was reasonable for Couri's attorney to have relied upon Couri's recitation of facts supporting Couri's claim that LaHood breached his oral agreement with Couri. Because this case involves an oral agreement between Couri and LaHood, with no apparent witnesses, Couri was the only person who knew the facts. Accordingly, Couri's attorney did not breach her duty under Rule 137.

■ We find no merit to Martha's other allegations of attorney misconduct. The original complaint was superseded by the filing of the amended complaint, which was complete in itself and contained no references to the original complaint. (*People v. Cross* (1986), 144 Ill. App. 3d 409, 494 N.E.2d 703.) The original complaint is no longer part of the record, having been in effect abandoned or withdrawn. *Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 462 N.E.2d 774.

■ Martha also alleges Couri's attorney's failure to investigate whether LaHood was alive at the moment the amended complaint was filed is sanctionable under Rule 137. Martha does not allege Couri's attorney knew of LaHood's death or that his death was imminent at the time the complaint was filed. Additionally, Martha argues Couri's attorney unreasonably delayed the resolution of this liti-

gation after it became readily apparent LaHood's death caused evidentiary problems for Couri's case because of the Dead Man's Act. Specifically, Martha argues Couri's motion to continue in response to defendant's motions for summary judgment and dismissal of counts III, IV, and VII of the complaint, filed in February 1989, was not warranted by existing law because it is clear then that the Dead Man's Act barred the only alleged evidence of Couri's claims.

We fail to discern how the sudden and unknown death of the defendant in this action rendered Couri's cause of action totally meritless and not warranted in existing law *when the amended complaint was filed.* Rule 137 does not require that attorneys anticipate defenses to a plaintiff's claim or withdraw an action at the instant a defense is interposed to avoid the imposition of sanctions. (See *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 621-22, 532 N.E.2d 595, 599.) One purpose of Rule 137 is to prevent the filing of frivolous lawsuits, not to penalize litigants and their attorneys simply because they were not successful in litigation. (*Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 41, 518 N.E.2d 1374, 1382.) The record establishes plaintiff's attorney pursued the litigation on plaintiff's behalf, and continued to advise the court of her intentions to find any possible third party with knowledge of the oral contract between Couri and LaHood. Only after these efforts failed did the litigation come to an end. Accordingly, we affirm the trial court's denial of defendant's request for sanctions. The issues, whether section 2—611 or Supreme Court Rule 137 applies and whether Supreme Court Rule 137 may be applied retroactively, are rendered moot by our decision.

For the foregoing reasons, the orders of the trial court are affirmed.

Affirmed.

KNECHT, P.J., and SPITZ, J., concur.