DERBY MEADOWS UTILITY COMPANY, INC., Plaintiff-Appellee and Cross-Appellant, v. THE VILLAGE OF ORLAND PARK, Defendant (Camelot Homes, Inc., Defendant-Appellant and Intervenor-Cross-Appellee; La Salle National Bank, as Trustee, Intervenor-Appellant and Cross-Appellee).

First District (6th Division)   No. 1—91—1237

Opinion filed February 21, 1992.

Cowan & Minetz, Chartered, of Chicago (Robert S. Minetz and Sarah S. Hirsen, of counsel), for appellants.

Ross & Hardies, of Chicago (Jeffery M. Cross and P. Matthew Glavin, of counsel), for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

At issue in this case are cross-motions for sanctions brought pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). The relevant facts pertaining to the substantive action below are to be found in our recent opinion *Derby Meadows Utility Co. v. Inter-Continental Real Estate* (1990), 202 Ill. App. 3d 345, 559 N.E.2d 986 (*Derby I*).

The facts pertaining to the issues we resolve are as follows. On September 28, 1987, plaintiff Derby Meadows Utility Company, Inc. (Derby Meadows), filed suit against defendant Village of Orland Park (Orland Park). Count IV of the complaint in that case sought injunctive relief to prevent Orland Park from providing utility services to the Pinewood North subdivision (the subdivision). Count IV alleged that Orland Park had tortiously interfered with an oral contract between Derby Meadows and defendant Camelot Homes, Inc. (Camelot), the developer of the subdivision, whereby Derby Meadows was to provide utility service to the subdivision.

On February 18, 1988, Derby Meadows filed suit against Camelot, based on the same oral contract pleaded in count IV of the complaint against Orland Park. On August 31, 1988, Camelot and La Salle National Bank (La Salle), as trustee under trust agreement dated April 2, 1987, and known as trust No. 112194, were allowed to intervene in the Orland Park case, and the cases were consolidated. Camelot first

asserted the affirmative defense that the contract between it and Derby Meadows was unenforceable due to the Statute of Frauds (Ill. Rev. Stat. 1987, ch. 59, par. 1 *et seq.*) on June 13, 1988. Camelot and La Salle filed a motion for summary judgment based on this affirmative defense, which the trial court granted on May 25, 1989. Derby Meadows appealed, and we affirmed in *Derby I.*

Meanwhile, on June 21, 1989, Camelot and La Salle filed their motion for sanctions. Derby Meadows filed a motion for sanctions against Camelot and La Salle, and the trial court denied both motions on July 10, 1989. A Rule 304(a) finding (134 Ill. 2d R. 304(a)) was entered on March 15, 1991.

During the summer of 1987, Derby Meadows retained counsel to represent it in the Orland Park litigation. Derby Meadows believed that Orland Park was interfering with, among other contracts, its oral contract with Camelot. Counsel for Derby Meadows interviewed Anthony Perino, Derby Meadows' president, prior to filing suit. Perino told counsel that he had met with Camelot's president, Robert Kaup, and that Kaup asked whether Derby Meadows would provide sewer, water and utility service to the Pinewood North subdivision. Perino responded affirmatively, and the two discussed the procedure for obtaining authorization from the Illinois Commerce Commission, routes for utility lines and the price and timing for the provision of such utility services. Perino further told counsel that Kaup told him [Perino] "we've got a deal," and the two shook hands.

Additionally, on August 20, 1987, counsel for Derby Meadows interviewed Kaup. The fact that Derby Meadows was preparing a lawsuit against Orland Park was discussed. According to counsel for Derby Meadows, Kaup related that Orland Park was giving him a hard time concerning the Pinewood North subdivision, and that according to Kaup, Camelot "ha[d] a contract with Derby Meadows." Kaup, in fact, indicated that if Derby Meadows did not provide water and sewer services to the subdivision, Camelot "would sue."

As indicated, Derby Meadows sued Orland Park on September 28, 1987. During discovery on the Orland Park case, counsel for Derby Meadows obtained documents which corroborated the existence of an oral contract with Camelot. These included: (1) minutes of a March 20, 1987, hearing of the Cook County Zoning Board of Appeals, wherein it was stated that Derby Meadows would provide the water and sewer utility service; (2) minutes from a July 28, 1987, meeting of the Orland Park Plan Commission, wherein it was stated that the water and sewer utility service would be provided through a route necessarily Derby Meadows'; (3) and the purchase contract for the Pine-

wood North property, dated October 15, 1986, which stated that the contract was contingent upon "the certification of real estate for service by Derby Meadows Utility Company with sewer and water service."

On October 12, 1987, Kaup wrote to counsel for Derby Meadows and suggested that no enforceable contract between Camelot and Derby Meadows existed. On October 15, 1987, counsel for Derby Meadows wrote to Kaup in response and advised Kaup that if Camelot breached the oral contract with Derby Meadows, Derby Meadows would take appropriate legal action. Kaup thereafter advised Derby Meadows that Camelot would not purchase water and sewer services for the Pinewood North subdivision from Derby Meadows, and Derby Meadows filed suit for specific performance on the oral contract.

The record reveals that Camelot had knowledge of Derby Meadows' suit against Orland Park from the case's inception. In May of 1988, the Orland Park case went to trial. At no point had Camelot sought leave to intervene in the case. On July 12, 1988, the trial court in the Orland Park case issued post-trial findings, ruling that a valid, enforceable contract between Derby Meadows and Camelot existed, and that Orland Park had tortiously interfered with the contract. On July 21, 1988, before an order on the verdict in the Orland Park case had been entered, Camelot and La Salle filed a petition to intervene in the Orland Park case, which the trial court granted. The cases were consolidated.

We held in *Derby I* that the Statute of Frauds (Ill. Rev. Stat. 1987, ch. 59, pars. 1, 2) rendered the oral contract unenforceable. We further held that Kaup's statements in his deposition, and Camelot's statements in answer to Derby Meadows' complaint, did not qualify as judicial admissions, and thus the exception to the Statute of Frauds where the existence of the contract is admitted did not apply. Hence, summary judgment was properly granted in favor of Camelot and La Salle, and dismissal of Orland Park was proper as well. See *Derby*, 202 Ill. App. 3d at 354-57.

The first issue we address is whether the trial court erred in denying Camelot and La Salle's section 2—611 motion for sanctions.

■■ The foregoing substantive issues are not at issue in this appeal. Rather, we are concerned solely with whether sanctions should have been granted below under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). In *People ex rel. Village of Buffalo Grove v. Village of Long Grove* (1990), 199 Ill. App. 3d 395, 557 N.E.2d 643, the court discussed section 2—611, observing:

"Section 2—611 requires that an attorney or a *pro se* party sign every pleading, motion, or other paper filed with the court. [Citation.] This signature constitutes a certificate that the attorney or *pro se* party has read the document, has made a reasonable inquiry into its basis, and believes that it is well grounded in fact, warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and the paper is not [filed] for any improper purpose, such as harassment or delay. [Citations.] If a pleading, motion, or other paper is signed in violation of this provision, 'the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.' [Citation.]" 199 Ill. App. 3d at 418.

Contrary to the brief argument of defendant-intervenors that we should review the trial court's denial of the sanctions motion *de novo*, it is well settled that the granting or denial of sanctions under section 2—611 is within the sound discretion of the trial court, and the trial court's ruling will not be overturned absent an abuse of that discretion. (See *Jackson v. Pellerano* (1991), 210 Ill. App. 3d 464, 569 N.E.2d 167; *Couri v. Korn* (1990), 202 Ill. App. 3d 848, 855, 560 N.E.2d 379, citing *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77-78, 535 N.E.2d 876, 883.) In *Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 570 N.E.2d 361, the court defined the abuse of discretion standard in the sanctions context:

"A trial court exceeds its discretion only where no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the trial court's actions, then a reviewing court cannot say that the trial court abused its discretion." 211 Ill. App. 3d at 334-35, citing *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.

■ Camelot and La Salle make several arguments in support of their position that sanctions should have been imposed against Derby Meadows. Initially, they complain that it was "reprehensible" for Derby Meadows not to include them in Derby Meadows' initial complaint against Orland Park, because they had such a great interest in the provision of water and sewer service to their property. What this argument ignores is the evidence in the record to support Derby

Meadows' argument that at the time of the filing of suit against Orland Park, the president of Camelot had apparently informed counsel for Derby Meadows that Camelot wanted to abide by the oral agreement. Camelot and La Salle have provided no authority to suggest that a party is compelled to sue someone to protect the other's interest, especially when the other party has indicated that the relief sought by the suing party is unopposed by the other party.

Next, Camelot and La Salle argue that it was improper for Derby Meadows not to join them in the Orland Park suit, for the same reason it was improper for Derby Meadows not to sue them in the first instance. Once again, Camelot and La Salle have cited no authority which supports their argument, and it does not seem that sanctions are warranted, particularly in light of the fact that the president of Camelot, Kaup, knew about the Orland Park litigation from the inception, yet Camelot and La Salle waited until after the trial to petition to intervene.

Defendants next state their main contention in this case, when they state: "The issue in this case is whether Derby Meadows should be sanctioned for filing a suit barred by the Statute of Frauds." As defendants acknowledge, the relevant point in time is the prefiling-of-complaint time frame. The primary authority defendants rely on is *Wren v. Feeney* (1988), 176 Ill. App. 3d 364, 531 N.E.2d 155. There the Third District Appellate Court, over a dissent, held that the dismissal of a medical malpractice complaint barred by the medical malpractice statute of limitations was a proper ground for sanctions under section 2—611.

Without addressing the propriety of *Wren*, however, we find it readily distinguishable. First, it might be said that the affirmative defense of a statute of limitations is generally easier to anticipate and analyze than the affirmative defense at issue in this case. This is so due to the many exceptions to the Statute of Frauds. Second, in this case, as opposed to the *Wren* case, there exists affirmative evidence in the record that an exception to the subsequently asserted affirmative defense was known to the plaintiff at the time of filing suit.

Camelot and La Salle claim that Derby Meadows had no right to expect that an exception to the Statute of Frauds might apply to this case, namely, that Camelot would admit the existence of the oral contract. This even though Camelot and La Salle do not at any point in the briefing dispute that Camelot's president, Kaup, told counsel for Derby Meadows that a contract existed and Camelot expected and desired Derby Meadows to perform its part of the bargain. While Kaup did not admit this in the case *sub judice*, given that Derby Meadows

had the prefiling information that a contract existed, it seems clear that it was not unreasonable for Derby Meadows to rely on the exception to the Statute of Frauds when the complaints were filed. Contrary to Camelot and La Salle's arguments, Derby needn't have pleaded the affirmative defense in its complaint and the defense was not in issue until defendants pleaded it (see *Cutsinger v. Cullinan* (1979), 72 Ill. App. 3d 527, 391 N.E.2d 177); thus, Derby Meadows was under no obligation to plead an exception to the potential affirmative defense.

A litigant or counsel will not be liable for sanctions merely because a claim is ultimately unsuccessful or because the facts are ultimately found to be adverse to the pleadings. (*Couri v. Korn*, 202 Ill. App. 3d 848, 560 N.E.2d 379.) It is not " '*per se* unreasonable to initiate a lawsuit and pursue a possible claim where the defendant may have a strong defense.' " (Emphasis added.) (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 622, 532 N.E.2d 595, quoting *Mihalik v. Pro Arts, Inc.* (6th Cir. 1988), 851 F.2d 790, 794.) Given that counsel for Derby Meadows investigated the claim not only by talking with his client, but by interviewing Kaup as well, and given the information those individuals supplied counsel with, we hold that ample evidence in the record supports the trial court's determination that sanctions were unwarranted, and the trial court's ruling was not in excess of its discretion.

■ We next address whether the trial court erred in denying Derby Meadows' section 2—611 motion for sanctions. Derby Meadows argues that the trial court abused its discretion in denying sanctions against Camelot and La Salle for alleged untrue allegations of fact and arguments unwarranted by law in their initial section 2—611 motion. According to Derby Meadows, defendants made untrue statements of fact in their motion, to the effect that they were "necessary" parties, and that the judge in the Orland Park case had found them to be so. Derby Meadows further argues that defendants pleaded an untrue statement of fact in their motion when they claimed that Derby Meadows was the single cause of the procedural morass that resulted in the action below. Finally, Derby Meadows argues that defendants should be sanctioned for claiming that Derby Meadows' complaint was sanctionable in the first instance.

We disagree. The contention of Derby Meadows, that defendants erroneously claimed that the procedural difficulties were Derby Meadows' fault, is not even an allegation of fact. Nor can we say, based on the record before us, that it was untrue for defendants to assert that they had previously been found a necessary party. We likewise reject

the claim that Camelot and La Salle should be sanctioned for bringing the motion on the grounds that they did. In sum, we cannot say that no reasonable person could take the view adopted by the trial court. We therefore hold that the trial court did not abuse its discretion in denying Derby Meadows' section 2—611 motion.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and LaPORTA, JJ., concur.