2016 IL App (1st) 150180

FIFTH DIVISION
December 30, 2016

No. 1-15-0180

| | | |
|---|---|---|
| KIMBERLY STIFFLE and SCOTT STIFFE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CH 15769 |
| | ) | |
| BAKER EPSTEIN MARZ, Doing Business as | ) | The Honorable |
| Baker Construction Group, | ) | Lynn M. Egan, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE HALL delivered the judgment of the court with opinion.

Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion.


OPINION


¶ 1     The plaintiffs, Kimberly and Scott Stiffle, appeal from an order of the circuit court of Cook County granting the defendant's, Baker Epstein Marz's, motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) and dismissed the plaintiffs' second amended complaint with prejudice.  On appeal, the plaintiffs contend that the circuit court erred

when it found they violated Rule 137 and that dismissal of their second amended complaint with prejudice was too severe a sanction. For the reasons set forth below, we affirm in part and vacate in part the order of the circuit court.

¶ 2 BACKGROUND

¶ 3 I. The Pleadings

¶ 4     On June 14, 2013, the plaintiffs filed a single-count complaint against the defendant alleging breach of contract in connection with the defendant's construction of a residence for the plaintiffs. The complaint sought $280,000 in damages for construction defects the plaintiffs discovered after they moved into the residence. The complaint alleged that the plaintiffs entered into a construction contract with the defendant sometime in or around September 2008, and further alleged as follows:

"The actual written contract is unavailable as of the date of filing this Complaint, although it is believed to be an AIA form contract between owner and contractor."

In compliance with section 2-606 of the Code of Civil Procedure (Code) (735 ILCS 5/2-606 (West 2012)), attached to the complaint was the plaintiffs' affidavit stating in pertinent part that they had "entered into a written contract" with the defendant for the construction of a new single-family residence. The plaintiffs set forth in general terms the duties of the defendant under the contract and the price they agreed to pay the defendant. The affidavit stated further as follows:

"As of the date of filing of this complaint, we are unable to locate the original or a copy of the executed written contract. However, we believe it was an AIA contract and

the terms described herein and cited in the complaint are the agreed upon terms of the contract."

¶ 5    The defendant filed a motion to dismiss, *inter alia*, citing the plaintiffs' failure to attach the written contract to the complaint and their failure to state that they had signed a written contract with the defendant. While, in response, the plaintiffs maintained that their affidavit was sufficient, they were granted leave to file an amended complaint.

¶ 6    On February 7, 2014, the plaintiffs filed their first amended complaint for breach of contract against the defendant. In the first amended complaint, the plaintiffs alleged that the parties "began negotiating a standard AIA Document-A107 Agreement" for the construction of the plaintiffs' residence. They further alleged that the parties "eventually agreed on a modified version of the AIA form agreement" whereby the defendant agreed to act as general contractor for the construction of the residence, and the plaintiffs agreed to pay a specific sum for the construction. The plaintiffs further alleged that "[t]he parties never executed the [AIA] Agreement but nonetheless [the defendant] started work on the project at the [plaintiffs'] request." Attached to the first amended complaint was a copy of the non-executed AIA standard agreement and the architect's plans and specifications for new residence.

¶ 7    After its initial motion to dismiss the first amended complaint was denied as legally insufficient, the defendant move to dismiss the first amended complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2012)).  The defendant pointed out that after alleging the existence of a written contract in the original complaint, the plaintiffs now claimed that despite the lack of signatures, the parties had agreed to modifications of the standard

AIA agreement. At the bottom of its pages, the modified standard AIA agreement was referred to as the "Stiffle working draft – 08-01-07.doc[.]" The defendant maintained that the provision dealing with the execution of the contract and the signature lines in the modified standard AIA agreement evidenced that the document would have no effect unless signed by the parties.

¶ 8    The motion to dismiss was supported by the affidavit of Warren Baker who participated in the preliminary negotiations on behalf of the defendant with the plaintiffs. Mr. Baker averred that a standard AIA agreement or other formal written contract was consummated by the parties; that the parties' negotiations never brought them close to executing such a document; and that the unsigned modified standard AIA agreement relied on by the plaintiffs was merely a series of proposals and counter proposals.

¶ 9    The plaintiffs' response to the motion to dismiss was supported by the affidavit of plaintiff Kimberly Stiffle. She averred that the parties agreed on a modified version of the standard AIA agreement and that the defendant proceeded to begin construction of the plaintiffs' residence in accordance with the modified version of the standard AIA agreement.

¶ 10    The circuit court granted the defendant's motion to dismiss without prejudice. The court granted the plaintiffs leave to file an amended complaint alleging specific facts to establish the terms of an oral contract between the parties.

¶ 11    In their second amended complaint, the plaintiffs alleged that the parties never executed a written contract, but "they reached an oral agreement on or about August 27, 2007," and alleged the duties of the parties pursuant to the terms of the oral agreement. The second amended complaint added a cause of action alleging that the defendant breached the implied warranty of

habitability based on the various defects the plaintiffs discovered after they moved into the residence.

¶ 12 II. Rule 137 Sanctions

¶ 13    The defendant responded with a motion for sanctions pursuant to Rule 137. The defendant maintained that the first amended complaint violated Rule 137 by: (1) falsely asserting that the parties had agreed to a modified version of the standard AIA agreement; (2) attempting to enforce a unsigned document consisting of proposed and counter proposed terms which neither party agreed to; and (3) submitting Kimberly Stiffle's affidavit which contradicted the plaintiffs' joint affidavit submitted with the original complaint and contradicted their response to the motion to dismiss in which they admitted the terms of the contract they were trying to enforce were uncertain.

¶ 14    The defendant further alleged that in their second amended complaint, the plaintiffs and their attorney violated Rule 137 in that (1) the original complaint alleged that the plaintiffs entered into a written contract with the defendant, and they executed an affidavit averring to that fact; (2) in her affidavit attached to the plaintiffs' response to the defendant's section 2-619.1 motion to dismiss, Kimberly Stiffle affirmed under oath that the parties were in negotiations in or around August 2007 and eventually agreed to the modified standard AIA agreement attached to the first amended complaint; (3) in the second amended complaint, the plaintiffs alleged that the parties never executed the written contract but reached an oral agreement on or about August 27, 2007, directly contradicting the plaintiffs' allegation in the original complaint that they entered into a written contract with the defendant in or about September 2008; and (4) the averment that

5

the parties reached an oral agreement on or about August 27, 2007, was directly contradicted by e-mails between the plaintiffs and their attorney and the defendant indicating the parties were still negotiating after that date. As sanctions for the violations, the defendant requested the dismissal of the second amended complaint with prejudice and leave to file a request for attorney fees and costs.

¶ 15    In response to the motion for sanctions, the plaintiffs explained that, prior to the filing of the complaint, they attempted unsuccessfully to locate a signed copy of the written contract by searching their records and contacting their architect. Due to the deterioration of their relationship with the defendant, they did not request a copy of the signed copy from it. Nonetheless, because of the size of the project and amount of money involved in the construction, in excess of 1 million dollars, the plaintiffs "reasonably believed they had executed a contract with Defendant."

¶ 16    Moreover, after the plaintiffs responded to the defendant's motion to dismiss the first amended complaint, the defendant's attorney contacted the plaintiffs' attorney advising that the defendant's file "did not include a signed initial contract between Plaintiffs and Defendant," but there were multiple change orders providing in pertinent part as follows:

> "This Change Order amends the 'Abbreviated Standard Form of Agreement
> between Owner and Contractor for Construction Projects of Limited Scope where the
> basis of Payment is a Stipulated Sum (AIA Document A107-1997)' dated 'PENDING'
> and/or the Letter of Intent, executed on August 25, 2007, by which the Owner authorized
> the Contractor to begin work and which separately and together serve as the

understanding and agreement between the Owners and the Contactor for the premises

known as 4207 N. Greenview, Chicago, Illinois." (Emphasis omitted.)

However, the defendant's attorney noted that not all the change orders were signed by the

plaintiffs and the defendant.

¶ 17    The plaintiffs maintained that the first amended complaint rectified their mistaken belief

that there was a signed modified standard AIA agreement in existence but did not change the

nature of their breach of contract claim. The allegation in the second amended complaint that the

parties had an oral agreement was based on the numerous change orders referring to the August

25, 2007, AIA Agreement and/or Scott Stiffle's letter of intent. The plaintiffs reason that in order

for the defendant to commence construction, "there must have been an agreement between the

parties."

¶ 18 III. The Circuit Court's Ruling

¶ 19    On December 11, 2014, the circuit court issued its ruling on the defendant's motion for

sanctions. In a lengthy and detailed order, the court reviewed the facts pertaining to the parties'

negotiations over the construction of the residence and the procedural history of the plaintiffs'

breach of contract claim. The court noted that the defendant had the burden of establishing that

the plaintiff made untrue and false allegations without reasonable cause and that the burden was

satisfied if the plaintiffs or their attorney knew or should have known that the pleadings were

untrue at the time the pleadings were filed.

¶ 20    In determining that the defendant had met its burden, the court stated in pertinent part as

follows:

"For instance, the original Complaint alleged, without equivocation, the existence of a written contract. Plaintiffs and their attorney now admit that no such written contract was ever agreed upon or executed. Yet, plaintiffs signed an affidavit supporting the false claim and their attorney affixed his signature to the Complaint which included the false claim and affidavit. Plaintiffs' current argument that they reasonably believed that an executed, written contract controlled the obligations of the parties is, to put it mildly, preposterous given the lengthy negotiations and disagreements about the initial AIA agreement form submitted by defendant. Their attorney's suggestion that he, too, reasonably believed such a contract existed is not only preposterous given his representation of the plaintiffs during the negotiations, but downright disheartening considering his status as an officer of the court."

¶ 21    Turning to the allegations of the first amended complaint, the circuit court found that while the plaintiffs conceded the lack of an executed contract, "they persisted in advancing the false narrative about a written contract by again alleging the existence of a written contract which simply had not been formally executed by the parties." The plaintiffs unequivocally alleged in the first amended complaint that the parties "proceeded forward with their respective obligations pursuant to the terms of the Agreement," despite the fact that they never formally executed the agreement. The court found more egregious the fact that the plaintiffs attached a copy of the modified standard AIA agreement to the first amended complaint even though they knew that it had not been accepted by the defendant as the controlling document. The court found that the plaintiffs knew or should have known "there was no written contract and that the

modified AIA form did not control the parties' obligations. The court found "unfathomable" that the plaintiffs' attorney did not affirmatively know these facts. Moreover, the extensive negotiations and disagreements over the handwritten modifications the plaintiffs added to the unexecuted standard AIA agreement and the defendant's outright rejection of some of the modifications explained why the parties never executed the modified standard AIA agreement, "a fact which simply could not have escaped the notice of plaintiffs or their attorney." The fact that the plaintiffs attached the unexecuted modified standard AIA agreement to the first amended complaint proves they knew that a written contract never existed, and their shift from an executed written contract to an unexecuted modified standard AIA agreement "suggests a deliberate intent to deceive given the fact that plaintiffs and their attorney knew a written contract had never been agreed upon or executed."

¶ 22    The circuit court found that, in an effort to avoid dismissal, the plaintiffs and their attorney continued to "perpetuate falsehoods," when in response to the defendant's motion to dismiss the first amended complaint, the plaintiff's attorney signed a document expressly stating that "the parties agreed on a modified version" of the standard AIA agreement, and Kimberly Stiffle averred that the parties had " 'eventually agreed on a modified version of the AIA Agreement which is attached to the Amended Complaint as Exhibit A.' " Finally, the court found that in the second amended complaint, plaintiffs and their attorney abandoned the prior allegations and sworn statements about a written contract and now alleged an oral contract. This oral contract was reached "on a date that preceded the negotiations about the proposed written

contract." Therefore, the "[p]laintiffs and their attorney not only should have known this was false, but the record affirmatively demonstrates that they affirmatively did know it was false."

¶ 23 The circuit court found that sanctions were not only warranted but required to punish the plaintiffs' egregious behavior, since the violations (1) went to the very heart of the proposed claim; (2) were contained in briefs, complaints and affidavits signed by the plaintiffs and their attorney; (3) the repetitive nature of the falsehoods increased the cost of litigation and caused excessive delay in the case; and (4) because of the violations which took up the court's time in dealing with them, the time available for other pending cases was reduced.

¶ 24 Finally, the court found that dismissal with prejudice was the appropriate sanction in particular since the plaintiffs continued to deny the inappropriateness of their conduct, and a lesser sanction would not serve to deter such conduct on their part or ameliorate the prejudice to the defendant and the litigation process.

¶ 25 The plaintiffs filed a timely notice of appeal from the circuit court's order granting the defendant's motion for sanction and dismissing the second amended complaint with prejudice.

¶ 26 ANALYSIS

¶ 27 I. Rule 137 Violation

¶ 28 A. Standard of Review

¶ 29 "Whether Rule 137 has been violated is reviewed under the manifest weight of the evidence standard." *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020-21 (2004). A judgment is against the manifest weight of the evidence "where the opposite conclusion is clearly

evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented."

*In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 70.

¶ 30 B. Discussion

¶ 31     Compliance with Rule 137 requires that "[e]very pleading, motion and other document of a party represented by an attorney shall be signed by at least one attorney of record. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137 (eff. July 1, 2013).

¶ 32     Rule 137 is intended to prevent the filing of false and frivolous lawsuits. *Sanchez*, 352 Ill. App. 3d at 1020. The rule is designed to prohibit the abuse of the judicial process by claimants who make vexatious and harassing claims based upon unsupported allegations of fact or law but not to penalize attorneys or litigants who were zealous but unsuccessful. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 7 (2000).  The party seeking sanctions for a violation of Rule 137 bears the burden of proof and must show that the opposing party made untrue and false allegations without reasonable cause. *Rubino v. Circuit City Stores, Inc.*, 324 Ill. App. 3d 931, 946 (2001). Since Rule 137 is penal in nature, it must be strictly construed. *Sanchez*, 352 Ill. App. 3d at 1020.  "An appellate court should base its review of the trial court's decision on three factors: (1) whether

the court's ruling was an informed one; (2) whether the ruling was based on valid reasons that fit the case; and (3) whether the ruling followed logically from the stated reasons to the particular circumstances of the case." *Sanchez*, 352 Ill. App. 3d at 1020.

¶ 33    The plaintiffs assert that, prior to filing the complaint in this case, they and their attorney tried to locate the written contract by searching their records and contacting their architect. They explained their failure to contact the defendant prior to filing the suit because of the contentious relationship that had developed between them. The plaintiffs point out that while the architect did not have a copy of the contract, he did not advise them that a standard AIA agreement between the parties was never signed. Therefore, the plantiffs' and their attorney's actions were reasonable at the time the complaint was filed.  See *Sanchez*, 352 Ill. App. 3d at 1020 ("[c]ourts should use an objective standard in determining what was reasonable under the circumstances as they existed at the time of the filing").

¶ 34    The plaintiffs' claim that they acted reasonably under the circumstances is belied by the record. After their initial investigation failed to produce a written contract, the plaintiffs filed a complaint for breach of contract supported by their joint affidavit in which they affirmatively stated that the parties had entered into a written contract which was unavailable at the time of filing. Some six months later, the plaintiffs filed their first amended complaint alleging that the parties had entered into a modified version of the standard AIA agreement but acknowledged that it was unsigned. Following the dismissal of the first amended complaint, the plaintiffs filed their second amended complaint in which they denied that a written contract existed between the parties but now alleged that the parties had an oral contract. Under the most benign view of these

complaints and supporting affidavits, it is apparent that at no time did the plaintiffs have a reasonable belief that a written contract existed between the defendant and them.

¶ 35    Next, the plaintiffs contend that their first amended complaint had a basis in existing law. They point out that a contract can be made up of several documents, such as the change orders in this case, and the fact that the defendant constructed their residence reflected that the parties were operating under a modified version of the standard AIA agreement, albeit an unsigned one. However, the plaintiffs did not allege that theory in the first amended complaint. Instead, both in the first amended complaint and in the supporting affidavit of plaintiff Kimberly Stiffle, the plaintiffs alleged that the parties agreed on a modified version of the AIA standard agreement.

¶ 36    The plaintiffs contend that the circuit court erred when it found that they violated Rule 137 by alleging in the second amended complaint that they entered into an oral contract with the defendant in August 2007 despite evidence that negotiations with the defendant over the terms were ongoing. The plaintiffs argue that the court disregarded the fact that the defendant's construction of their residence was underway in September 2007. The plaintiffs reason that there must have been an agreement in place for the defendant to begin construction. Not only is such an argument not supported by the record in the case, but it refutes the plaintiffs' claim that they conducted a reasonable investigation of the facts prior to filing the complaint in this case allowing them to allege affirmatively that the parties entered into a written contract.

¶ 37    The plaintiffs argue that the circuit court's findings were based on conduct occurring after the filing of the complaint, rather than what was reasonable at the time the complaint was

filed. "Implicit in [Rule 137] is a requirement that ' "an attorney promptly dismiss a lawsuit once it becomes evident that it is unfounded." ' " *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 13 (quoting *American Service Insurance v. Miller*, 2014 IL App (5th) 130582, ¶ 13 quoting *Rankin v. Heidlebaugh*, 321 Ill. App. 3d 255, 267 (2001)). At the very latest, the affidavit of Mr. Baker in support of the defendant's motion to dismiss the amended complaint should have alerted the plaintiffs and their attorney to the distinct possibility that a written contract did not actually exist, prompting the dismissal of the lawsuit at that point. Instead, the plaintiffs filed their second amended complaint, in which they denied the existence of a written contract, a direct contradiction of their prior allegations and averments.

¶ 38    The plaintiffs rely on *Couri v. Korn*, 202 Ill. App. 3d 848 (1990). In that case, the reviewing court upheld the trial court's decision that the plaintiff and his attorney had not violated Rule 137. The court found no abuse of discretion in the denial of Rule 137 sanctions where the allegation in the complaint as to the number of shares to be purchased conflicted with the plaintiff's deposition testimony that the number of shares was never discussed. *Couri*, 202 Ill. App. 3d at 855. The court noted that "[a]motion for attorney fees will not be granted where the movant has only shown that the facts were ultimately adverse to the pleadings as set forth in the trial court." *Couri*, 202 Ill. App. 3d at 855.  In affirming the denial of sanctions against the plaintiff's attorney, the reviewing court found it reasonable for the attorney to rely on her client's recitation of the facts of an oral contract with the deceased since they were the only witnesses to the oral contract. *Couri*, 202 Ill. App. 3d at 856. In addition, during the litigation, the attorney continued to investigate the possibility of other witnesses to the oral contract. *Couri*, 202 Ill.

App. 3d at 857.  Finally, Rule 137 did not require attorneys to anticipate defenses to a claim or withdraw an action the instant a defense is interposed in order to avoid the imposition of sanctions. *Couri*, 202 Ill. App. 3d at 857.

¶ 39    In contrast to *Couri*, the facts were not merely adverse to the plaintiffs' allegation that they entered into a written contract with the defendant, they were nonexistent. The plaintiffs continued to insist in their pleadings that a written contract existed in some form until they finally admitted that they never entered into a written contract with the defendant. Unlike *Couri*, the plaintiffs' attorney did not have to rely solely on the plaintiffs' representation as to the existence of a written contract since he participated in the negotiations with the defendant.

¶ 40    We conclude that the circuit court's determination that the plaintiffs and their attorney violated Rule 137 was not against the manifest weight of the evidence.

¶ 41 II. Imposition of Sanctions

¶ 42    The plaintiffs contend that the dismissal of their second amended complaint was too drastic a sanction in light of their alleged violation of Rule 137.

¶ 43 A. Standard of Review

¶ 44    An order granting or denying Rule 137 sanctions is reviewed for an abuse of discretion. *Peterson*, 313 Ill. App. 3d at 9. "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious  judgment, exceeds the bounds of reason and ignores

recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

¶ 45 B. Discussion

¶ 46 1. *Imposition of Sanctions*

¶ 47    Unlike section 2-611 of the Code (Ill. Rev. Stat. 1989, ch. 110, ¶ 2-611)), which it preempted, Rule 137 grants the court the discretion whether to impose a sanction, even if a violation of the rule is found. *In re Marriage of Sykes*, 231 Ill. App. 3d 940, 946 (1992). Under Rule 137, sanctions may be granted "(1) when a pleading, motion, or other paper is not 'well grounded in fact' or is not 'warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law,' or (2) when interposed for purposes such as to ' harass or to cause unnecessary delay or needless increase in the cost of litigation.' " *People v. Stefanski*, 377 Ill. App. 3d 548, 551 (2007) (quoting 155 Ill. 2d R. 137).

¶ 48    In its order granting sanctions to the defendant, the circuit court provided a thorough and detailed basis for imposition of sanctions. The court traced the history of the pleadings filed by the plaintiffs that were signed by their attorney as well as the affidavits averred to by the plaintiffs. The court's conclusion that the plaintiffs and their attorney filed pleadings which they knew or should have known were false was well-supported by the record and belied the plaintiffs' assertion that they merely made mistakes about the existence of the written contract and reasonably believed their allegations of each successive complaint when each was filed. Long after the plaintiffs and their attorney should have at the very least questioned the existence

of a written contract, signed or unsigned, they continued to assert the existence of this document rather than voluntarily dismiss the case until they could ascertain the basis of their breach of contract claim. Instead, they perpetuated the inherent falsity in all their complaints by alleging that there was no written contract but that the parties reached an oral agreement in August 2007, in direct contradiction to their prior allegations and the evidence that negotiations were ongoing past that date.

¶ 49    The plaintiffs claim that the defendant shares the responsibility for their mistaken belief that a written contract existed. They insist that the defendant was just as confused as they were as to the existence of the written contract. While acknowledging that the defendant had no obligation to assist the plaintiffs or their attorney in the preparation of their complaint, since both parties were equally confused as to the existence of the written contract, the plaintiffs lacked the "subjective bad faith" required to impose sanctions for increasing the cost of litigation.

¶ 50    In *Stefanski*, the reviewing court held that to award sanctions for a needless increase in the cost of litigation, there must be subjective bad faith, and where the court specifically found no subjective bad faith on the part of the State, the court could not rely on the needless increase in the cost of litigation to sanction the State. *Stefanski*, 377 Ill. App. 3d at 552. In contrast, in the present case, the circuit court characterized the plaintiffs' and their attorney's violation of Rule 137 as egregious and repetitious in continuing their perpetuation of false allegations in their pleadings which increased the cost of litigation in this case. Moreover, an objective determination of reasonableness applies to whether a filed paper was grounded in fact or warranted by existing law. *Stefanski*, 377 Ill. App. 3d at 552. When that portion of Rule 137 is at

issue, it is not sufficient that the party " 'honestly believed' that the allegations raised were grounded in fact and law." *Stefanski*, 377 Ill. App. 3d at 552 (quoting *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1074-75 (1995)).

¶ 51    The plaintiffs next argue that the defendant's defeat of their claim based on the nonexistent written contract was not *prima facie* evidence that their claim had no foundation and that they were sanctioned because they did not prevail. They further argue that the pleadings must not only be untrue and made without reasonable cause but must relate to facts not conclusions of law. The plaintiffs reason that the circuit court's ruling was based improperly on the legal conclusion that the parties had not entered into a legally binding contract. Therefore, the plaintiffs assert that their breach of contract claim was not frivolous, and sanctions should not have been imposed.

¶ 52    The plaintiffs' argument ignores the basis on which the sanctions were imposed in this case. From the very beginning of this litigation, the plaintiffs could have alleged, as they ultimately did, that they entered into an oral contract with the defendant for the construction of their residence. They did not. The basis for the dismissal sanction was the plaintiffs' false pleadings that a written contract existed and their persistence in that falsity even when confronted with evidence that at the very least should have caused them to question the truthfulness of their allegations that the parties had entered into a written contract and the defendant's breach of its duties under that contract.

¶ 53    We conclude that the circuit court did not abuse its discretion when it imposed sanctions after determining that the plaintiffs' and their attorney's actions in filing pleadings were not well grounded in fact or warranted by existing law and needlessly increased the cost of litigation.

¶ 54 2. *Appropriateness of the Sanction*

¶ 55    Even if sanctions were warranted in this case, the plaintiffs maintain that their conduct was not so egregious as to warrant the dismissal of their second amended complaint with prejudice. The plaintiffs argue that striking the offending allegations would be the appropriate sanction in this case.

¶ 56    Rule 137 does not limit the available sanctions, rather it "[i]t allows for 'an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee.' " (Emphasis omitted.) *Sanchez*, 352 Ill. App. 3d at 1023 (quoting 155 Ill. 2d R. 137).   The question is the appropriateness of the sanction in light of the misconduct. See *Sanchez*, 352 Ill. App. 3d at 1024 (the reviewing court found that the sanction damaged the plaintiff out of proportion to the misconduct committed by his attorney).

¶ 57    In *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731 (1997), the plaintiffs failed to appear at a status call, and the trial court dismissed the complaint with prejudice. The court denied the motion to vacate the dismissal on the grounds that the plaintiffs and their attorney had shown deliberate disregard for the court's authority.  This court reversed the order, finding that the discovery rules did not authorized dismissal with prejudice of a complaint as a sanction in the

case where no discovery orders were violated and the plaintiffs' isolated acts did not constititute disregard of the trial court's authority. *Berg*, 293 Ill. App. 3d at 735-36.

¶ 58     This court further found that Rule 137 could not be the basis for the dismissal sanction. The violations consisted of the improper inclusion of an attorney's identification number on one of two summonses and the presence of a disqualified attorney whose attempt to participate in the proceedings was precluded by the trial court. *Berg*, 293 Ill. App. 3d at 736-37.   There was no evidentiary hearing to resolve the factual disputes, and the trial court did not make the necessary legal or factual findings required to impose sanctions. The reviewing court did not reject dismissal with prejudice as an appropriate sanction. Rather, the court remanded the case to the trial court to provide sufficient information or valid reasons as to why dismissal was the appropriate sanction. *Berg*, 293 Ill. App. 3d at 737.

¶ 59     The plaintiffs rely on *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460 (2006) and *Smith v. City of Chicago*, 299 Ill. App. 3d 1048 (1998). In *Gonzalez*, the reviewing court held that the trial court erred in relying on Rule 137 as a basis for dismissing the complaint with prejudice, since Rule 137 concerned the filing of false pleadings and frivolous lawsuits and was not applicable to a discovery violation. *Gonzalez*, 369 Ill. App. 3d at 468-69.   In *Smith*, the reviewing court reversed a directed verdict entered for the defendant as a sanction for the plaintiff's attorney disclosure of a witnesses' testimony to the plaintiff's expert witness, was disproportionate to the attorney's misconduct. *Smith*, 299 Ill. App. 3d at 1055. While recognizing that such a sanction might be appropriate under more extreme circumstances, the court found

that the record did not support such a drastic sanction in the case before it. *Smith*, 299 Ill. App. 3d at 1055.

¶ 60    More recently, in *Santiago v. E.W. Bliss Co.*, 2012 IL 111792, our supreme court addressed a certified question asking whether the drastic sanction of dismissal may be imposed where the plaintiff filed the complaint using a fictitious name without the circuit court's approval. The court observed that the power to dismiss a complaint with prejudice derived from "Supreme Court Rule 219(c) (Ill. S. Ct. 219(c) (eff. July 1, 2002)) and the trial court's inherent authority to control its docket." *Santiago*, 2012 IL 111792, ¶ 16. The court held that as a matter of law, the trial court had the discretion to dismiss the complaint, explaining as follows:

> "Dismissal is neither mandatory nor precluded under those circumstances. Dismissal is justified only when (1) there is a clear record of willful conduct showing deliberate and continuing disregard for the court's authority; and (2) a finding that lesser sanctions are inadequate to remedy both the harm to the judiciary and the prejudice to the opposing party." *Santiago*, 2012 IL 111792, ¶ 20.

¶ 61    As to the first *Santiago* requirement set forth in *Santiago*, the circuit court found that the conduct of the plaintiffs and their attorney showed a deliberate and willful disregard for the court's authority by repeatedly filing complaints and affidavits containing allegations and averments which they knew or should have known were untrue. As to the second *Santiago* requirement, the court found that the plaintiffs' actions increased the cost of litigation and deprived other litigants of the court's time. The court determined the fact that the failure of the

plaintiffs and their counsel to recognize the inappropriateness of their conduct required no less a sanction than the dismissal of their second amended complaint with prejudice.

¶ 62    The circuit court's findings satisfy the first *Santiago* requirement that there be a clear record of willful conduct showing deliberate and continuing disregard for the circuit court's authority. However, we are reluctant to endorse the court's imposition of the extreme penalty of dismissal with prejudice without more specific findings as to why lesser penalties were inadequate to remedy the harm to the judiciary and prejudice to the opposing party as required by *Santiago*.

¶ 63    We conclude that this case must be remanded to the circuit court for more specific findings that lesser sanctions were inadequate to remedy the harm to the judiciary and the prejudice to the defendant and that dismissal of the second amended complaint with prejudice was the appropriate sanction in this case.

¶ 64 III. Rule 375 Sanctions

¶ 65    Pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), the defendant requests that this court sanction the plaintiffs and their attorney for filing an unfounded and frivolous appeal. A dismissal with prejudice is such a drastic sanction and is applicable only in the most egregious situation. We are remanding this case for further proceedings regarding the imposition of that sanction. Therefore, the plaintiffs' appeal was neither frivolous nor so lacking in foundation as to warrant sanctions for pursuing this appeal. We decline to impose Rule 375(b) sanctions. *Swanson v. Cater*, 258 Ill. App. 3d 157, 163 (1994).

## ¶ 66 CONCLUSION

¶ 67    We affirm the judgment of the circuit court finding that the plaintiffs and their attorney violated Rule 137, warranting the imposition of sanctions. We vacate that portion of the circuit court's order dismissing the second amended complaint with prejudice as a sanction for the plaintiffs' violation of Rule 137 and remand for further proceedings to determine whether dismissal with prejudice was the appropriate sanction in light of the second requirement set forth in *Santiago*.

¶ 68    Affirmed in part and vacated in part; cause remanded with directions.